**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**George Ralph HERRERA,**
**Defendant-Appellee.**

No. 80–1113.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1980.

Decided Feb. 23, 1981.

James D. Henderson, Atty., Dept. of Justice, Los Angeles, Cal., for the U. S.

James H. Kemper, Phoenix, Ariz., for defendant-appellee.

Before FLETCHER and FERGUSON, Circuit Judges, and GRANT,* District Judge.

FLETCHER, Circuit Judge:

The Government appeals from the dismissal of Herrera's indictment. The court below held that the Government's decision to proceed to trial on the indictment, in the face of Herrera's willingness to accept the Government's earlier offer to permit a guilty plea to a lesser charge, constituted vindictive prosecution. We reverse.

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

## I

### FACTS

On June 15, 1978, George Ralph Herrera and three co-defendants were indicted on ten counts of racketeering, conspiracy, and transportation of stolen property. 18 U.S.C. §§ 2, 1962(c), 1962(d), 2311, 2315.[1] All four defendants originally entered pleas of not guilty. After a number of continuances, a trial date was eventually set for October 23, 1979. By the time the date arrived, however, Herrera's co-defendants had all changed their pleas to guilty pursuant to sealed plea agreements.

Herrera's counsel began plea negotiations with the Government in October 1979, shortly before the scheduled trial date. On October 22, opposing counsel met in Phoenix, Arizona and tentatively agreed that Herrera would plead guilty to one felony count if he could be assured that he would not lose his California contractor's license as a result. If it appeared that a felony conviction would result in Herrera's losing his contractor's license, the parties agreed that Herrera would plead guilty to a misdemeanor. Counsel for the Government subsequently determined that a felony conviction would cause Herrera to lose his license, and notified Herrera that a misdemeanor plea would be acceptable. Believing that a plea agreement had been reached, the parties cancelled the trial set for the following day.

It is at this point that the parties' dispute begins. Herrera contends that the Government agreed to stipulate, pursuant to Fed.R.Crim.P. 11(e)(1)(C), that Herrera would receive no fine and no jail time as a result of his misdemeanor plea.[2] The Government, in contrast, contends that it agreed at most to recommend no fine and no jail time.[3] Such a recommendation would not have been binding on the trial court. Fed.R.Crim.P. 11(e)(1)(B).

On November 19, 1979, after it had become obvious that the parties disagreed as to the terms of the plea agreement, Herrera filed a motion to compel specific performance of what he believed the agreement to be. The court below denied the motion, apparently concluding that no plea agreement had been reached.[4] The following day, Herrera's counsel telephoned counsel for the Government and stated that Herrera was willing to accept "the Government's deal"; Herrera would plead guilty in exchange for the Government's recommendation of probation. The Government replied by letter that in order to "protect against further misunderstandings" it would "respond in writing to any written plea proposals" Herrera might submit, and that "[u]nless a formal proposal is submitted, we anticipate proceeding to trial ... on January 22, 1980." Herrera never submitted a written plea proposal.

On January 15, 1980, Herrera filed a new motion to compel specific performance of a

---

1. The charges stemmed from an alleged scheme to convert to the defendants' own use some $5.5 million in union health insurance funds. Had Herrera been found guilty on all counts, he could have been sentenced to over fifty years in prison.

2. Fed.R.Crim.P. 11(e)(1)(C) provides that the Government may, as part of a plea bargain, "agree that a specific sentence is the appropriate disposition of the case." When such an agreement has been made the trial court may accept or reject the whole, but it may not accept the defendant's guilty plea and impose a sentence greater than that agreed upon. Fed. R.Crim.P. 11(e)(2), (3).

3. The Government asserts in its brief that it did not agree to make any recommendation if Herrera pled guilty to a misdemeanor. The court below found, however, that the Government

"offered to grant the defendant the right to plead to a misdemeanor with a recommended sentence ... of probation." This finding is not contradicted by any of the Government's affidavits, nor did the Government object to it in open court.

4. The court stated that it had a policy of not allowing the Government to agree to a sentence under Fed.R.Crim.P. 11(e)(1)(C). The court then held that Herrera had failed to prove that the Government violated a plea agreement. Finally, the court informed Herrera that he had the option "as I understand the [Government's plea] offer, to plead to a misdemeanor with the Government's recommendation of probation ... or proceed to trial on the felony counts as scheduled."

plea agreement. This time, Herrera attempted to enforce the agreement on the terms originally offered by the Government: a misdemeanor plea in exchange for a recommendation of probation. In the alternative, Herrera moved to dismiss on the ground of prosecutorial delay. The court did not rule on Herrera's motion for specific performance but, characterizing the Government's conduct as "vindictive prosecution of an outrageous nature," dismissed the indictment with prejudice.[5] The court denied the Government's motion for reconsideration, and the Government brought this appeal.

## II

### VINDICTIVE PROSECUTION

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that a trial court cannot impose a more severe sentence on a defendant after retrial in retaliation for the defendant's having successfully challenged his first conviction. The Court extended the *Pearce* rule in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), holding that a prosecutor cannot reindict a defendant on more serious charges in retaliation for the defendant's exercise of a constitutional right. This case does not fall within the parameters of either *Pearce* or *Blackledge*, since Herrera was neither resentenced nor reindicted. Herrera nevertheless asks us to apply *Pearce* and *Blackledge* to the present situation, in which the Government elected to proceed to trial on the original indictment after offering to accept a guilty plea to a lesser charge.

■ A defendant's right to due process is violated whenever the Government "increases the severity of alleged charges in response to the exercise of constitutional or statutory rights." *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980); *see United States v. Griffin*, 617 F.2d 1342, 1346–47 (9th Cir. 1980); *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978); *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976). As we explained in *Burt*, "penalizing a person for doing what the law plainly allows him to do 'is a due process violation of the most basic sort.'" 619 F.2d at 836 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978)).

■ When the defendant is given a heavier sentence or when the charges against him are increased in retaliation for the exercise of some right, the defendant has clearly been penalized for his action. Stated another way, had the defendant not chosen to exercise the right, the sentence or charge would have remained at its original level. We are unable to conclude that Herrera has been penalized within the intendment of the cited cases. Herrera was indicted only once, in June of 1978. After Herrera's unsuccessful attempt to enforce his version of the plea agreement, the Government decided to try him on the original ten-count indictment. At no time had any of the charges against Herrera been dismissed, nor had the Government ever represented to Herrera that any charges would be dismissed. The Government thus did not "increas[e] the severity of alleged charges" against Herrera when it decided to proceed to trial.[6]

---

5. The court ruled that

   So far as the Court knows, there have been no facts or changes of circumstances which would raise this case from the level of the probation misdemeanor that the Government originally evaluated it as, and the Government's position now that they are going to proceed to a three-week trial on a multicount felony indictment with a defense counsel paid by the Government and some 30 to 40 witnesses from all over the country, as I understand, and possibly even from Europe, at Government expense, with a jury of 12 peo-

ple plus alternates sitting for that period of time, to the extent of many, many thousands of dollars, can only be characterized by the Court as vindictive prosecution of an outrageous nature which the Court does not intend to put up with.

6. We do not mean to suggest that a defendant may claim vindictive prosecution only when he has been resentenced or reindicted on heavier charges. There may be other factual settings in which a finding of vindictive prosecution would be justified. We simply hold that the Government's decision to proceed to trial on an

■ Herrera argues that when the Government offered to accept a misdemeanor plea, "the 'ante' had been reduced to misdemeanor level," and the Government's decision to try Herrera on the felony counts then "upp[ed] the ante," *Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). We disagree. Plea bargaining has long been recognized as "an essential component of the administration of justice," since "[i]f every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). In order to obtain the benefits of the plea bargaining process, the Government is encouraged to offer reductions in charges or recommendations for leniency in sentencing in exchange for the defendant's guilty plea. But such an offer by the Government is by no means an admission that the defendant is innocent of all charges other than that to which he may agree to plead guilty. The Government's offer is conditional upon the defendant's plea; if the defendant rejects the offer, he cannot object to the Government's decision to proceed to trial on the counts originally charged. *See United States v. Gerard*, 491 F.2d 1300, 1306 (9th Cir. 1974).

` We find further support for this conclusion in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The Supreme Court in *Bordenkircher* held that the Government could, as part of a plea negotiation, inform the defendant of its intention to reindict him on a more serious charge if he refused to plead guilty to the charge contained in the original indictment. *A fortiori*, if the Government can reindict the defendant on more serious charges after offering to accept a plea, the Government can also proceed on the full range of charges contained in its original indictment.

As we see it, Herrera's claim of Government wrongdoing is in the alternative: first, if a plea agreement was reached, the Government failed to carry out its part of the bargain; and second, if a plea agreement was not reached, the Government discontinued plea negotiations and refused to permit Herrera to enter a guilty plea to a misdemeanor.[7]

■ On the record before us, we do not reach the issue of whether there was a plea agreement.[8] We note that one remedy for breach of a plea agreement is specific performance, *Santobello v. New York*, 404 U.S. at 262–63, 92 S.Ct. at 498–99, and that Herrera is free to renew his motion for specific performance on remand. If there was no plea agreement, Herrera's rights were not violated by the Government's insistence that further plea negotiations be in writing. Plea bargaining is not a constitutional right; the Government can refuse to bargain altogether, *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977), and can thus cut off or limit negotiations if it chooses to do so. Neither the breach of a plea bargain nor the decision to terminate plea negotiations constitutes vindictive prosecution.

REVERSED AND REMANDED.

indictment, after offering to accept a guilty plea to a lesser charge, does not constitute vindictive prosecution because it does not increase the threat to the defendant in any way. *Cf. United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 n.1 (9th Cir. 1976) (leaving open the question of "how much of an increase is necessary before *Pearce* and *Blackledge* apply").

7. At oral argument, counsel for Herrera asserted that the issue in this case was actually whether Herrera had been denied a speedy trial. During the course of the proceedings below, Herrera filed two motions to dismiss for prosecutorial delay. The first such motion was denied on November 19, 1979, and the court below made no ruling on the second. We therefore conclude that the issue is not before us.

8. *Compare Virgin Islands v. Scotland*, 614 F.2d 360 (3d Cir. 1980) (Government may withdraw plea offer after defendant has accepted it, so long as defendant has not yet entered guilty plea or suffered prejudice) *with Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979) (defendant may hold Government to its plea offer, even if Government seeks to withdraw offer before defendant has accepted it).