**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Franke Eugenio MARTINEZ,
Defendant-Appellee.**

**No. 85–1146X.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1985.

Decided March 10, 1986.

**664**

Robert J. Erickson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Kenneth A. Padilla, Denver, Colo., Michael E. Tigar, Austin, Tex., William M. Kunstler, New York City, for defendant-appellee.

Before BROWNING, SNEED, and HUG, Circuit Judges.

SNEED, Circuit Judge:

The government appeals from the district court's dismissal of an indictment of Franke Martinez on the ground that the indictment had impermissibly retained the appearance of vindictive prosecution. We reverse.

## I.
### FACTS AND PROCEEDINGS BELOW

In 1973, appellee Franke Martinez, a Colorado attorney, was indicted for allegedly mailing letter bombs, for possessing explosive devices, and for conspiring to do so. He left the state to avoid apprehension and remained a fugitive until September 3, 1980, when he crossed the border in Nogales, Arizona to return to the United States. Upon being questioned by a customs inspector, he identified himself as "Jose Reynoso-Diaz," a United States citizen. After further interrogation, one inspector found a Mexican passport in Martinez's possession. The passport bore Martinez's photograph and identified him as Jose Reynoso-Diaz, a Mexican citizen. At that point Martinez ran out of the door of the building in which he was being interrogated. He was apprehended after a short scuffle in the United States about 200 yards from the Mexican border. The customs officials turned him over to INS officers, who administered the *Miranda* warnings, photographed him, and fingerprinted him. Although he had spoken fluent English in his conversation with the customs officials, he told the INS officers that he could not understand English and that he could not read or write. Refusing to sign a card acknowledging that he understood the *Miranda* warnings, he requested permission to return to Mexico immediately.

On September 5, 1980, Martinez was charged with the felony of making a false claim of United States citizenship, in violation of 18 U.S.C. § 911 (1982), and with the misdemeanor of eluding inspection by INS officers, in violation of 8 U.S.C. § 1325 (1982). Martinez is an American citizen but he did attempt to elude inspection. He was fingerprinted for a second time. On September 12, he appeared in Magistrate's Court in Tucson, Arizona, where he reiterated his pseudonym and his false claim of Mexican citizenship and, in accordance with a plea agreement, pleaded guilty to the

count of eluding INS inspection. In return, the government dropped the factually incorrect count of claiming false United States citizenship, and the magistrate sentenced Martinez to ten days' imprisonment. Martinez was moved to a camp to await either voluntary departure or deportation. Soon after this move, the INS learned that Martinez had been operating under the "Jose Reynoso-Diaz" pseudonym. The prosecution in Arizona allowed Martinez to be removed to Colorado to face trial on outstanding charges instead of pressing additional charges against him in Arizona.

The first Colorado trial resulted in a mistrial, when the judge and the prosecution engaged in conduct designed to provoke the defense into moving for mistrial. *See United States v. Martinez*, 667 F.2d 886, 890 (10th Cir.1981), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2301, 73 L.Ed.2d 1304 (1982). At the second trial, the government called witnesses to testify as to Martinez's apprehension in Arizona, arguing that his actions upon reentering the country in 1980 indicated his intent and his consciousness of guilt in the letter-bombing charges. He was acquitted, and on November 30, 1984, after an unrelated appeal, 'all remaining Colorado charges against him were dismissed on the government's motion.

During the second trial, the Arizona authorities, assisted by some conversations with the Colorado prosecution, began an investigation into the initial Arizona incidents. This investigation, which lasted two years, resulted in the present indictment. The reasons for the duration of the investigation are disputed. Martinez claims that the government was merely awaiting the outcome of the Colorado prosecution. The government contends that it was verifying fingerprints and seeking financial information, and that the outcome of the prosecutorial efforts in Colorado did not influence the decision to prosecute in Arizona. On January 15, 1985, Martinez was reindicted in Arizona and, four days thereafter, a superseding indictment was returned, charging Martinez with two counts of making false statements to federal officers concerning his identification and citizenship, 18 U.S.C. § 1001 (1982), and one count of making a false declaration before a court, 18 U.S.C. § 1623 (1982). After a full hearing at which the parties presented evidence and argument, the district judge ordered the indictment dismissed on the ground of vindictive prosecution. He found that no actual vindictive prosecution occurred but held that dismissal was required because the appearance of vindictiveness had not been rebutted. *See* 3 Reporter's Transcript (R.T.) at 336–38. This appeal ensued.

II.

STANDARD OF REVIEW

Martinez argues that this appeal should be dismissed for want of jurisdiction, pursuant to 18 U.S.C. § 3731 (1982), which prevents the United States from appealing "where the double jeopardy clause of the United States Constitution prohibits further prosecution." This claim is reviewed de novo. *See United States v. Hill*, 719 F.2d 1402, 1404 (9th Cir.1983).

The standard of review of a district court's finding of vindictive prosecution is a little less obvious. We recently examined the question in *United States v. Gann*, 732 F.2d 714 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984), noting that "[s]ome cases have suggested an abuse of discretion standard, while others deem the issue to be one of mixed law and fact, calling for the application of the clearly erroneous standard." *Id.* at 724 (citations omitted); *see United States v. North*, 746 F.2d 627, 632 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985). In *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), we reexamined the standard of review for mixed questions of law and fact.

If the concerns of judicial administration —efficiency, accuracy, and precedential weight—make it more appropriate for a district judge to determine whether the established facts fall within the relevant

legal definition, we should subject his determination to deferential, clearly erroneous review. If, on the other hand, the concerns of judicial administration favor the appellate court, we should subject the district court's finding to de novo review. . . .

. . . If . . . the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo.

*Id.* at 1202. While this guidance generally suggests de novo review, and thus substantially restricts choice, we readily accept that guidance here and review the district court's decision regarding vindictive prosecution de novo.

### III.

### THE DOUBLE JEOPARDY CLAIMS

Martinez makes two double jeopardy arguments. First, he asserts that his 1980 guilty plea to the charge of eluding inspection has conclusively established that he is "Jose Reynoso-Diaz," a Mexican citizen. He makes this claim despite the fact that the source of his "Jose Reynoso-Diaz" identity is his own false representations. Nonetheless, relying on the collateral estoppel doctrine recognized as a component of the double jeopardy clause in *Ashe v. Swenson,* 397 U.S. 436, 443–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), he claims that the United States may not now establish his true identity and citizenship in the present prosecution. Second, he argues that, because evidence of his flight and later apprehension in Arizona was held to be admissible in the Colorado trial, *see United States v. Martinez,* 681 F.2d 1248, 1254–59 (10th Cir.1982), his acquittal in the Colorado trial similarly prevents the government from bringing the instant charges to trial. We shall address each of these arguments in turn.

### A. *Double Jeopardy*

[1] The Supreme Court has held that the double jeopardy clause bars not only the retrying of identical claims but also bars further prosecution "when an issue of ultimate fact has once been determined by a valid and final judgment." *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194. Martinez argues that his 1980 guilty plea, involving as it did forgoing the prosecution on the count charging the claiming of false United States citizenship, conclusively established his "Reynoso-Diaz" identity. He cites *United States v. Bejar-Matrecios,* 618 F.2d 81, 83–84 (9th Cir.1980), in support of this contention. The case does not have the reach ascribed to it by Martinez. It is true that the court in dictum recognized that "evidence of a prior conviction, even though founded on a plea of guilty, may be relevant in a subsequent criminal proceeding to establish material facts necessary to sustain the prior judgment." *Id.* at 84. This dictum does not, however, accord a similar effect to the dropping of a count pursuant to a plea bargain. Whatever collateral estoppel effect a guilty plea might have must arise from the plea. It does not reach to factual assumptions on which certain counts dropped pursuant to a plea bargain might have rested.

■ This position is consistent with *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). There, a guilty plea to a lesser included offense was not permitted to bar prosecution on a greater inclusive offense. *See id.,* 104 S.Ct. at 2542–43. Here, like there, the guilty plea should not be permitted to be used as a sword. This is particularly true when the issue sought to be precluded is an erroneous factual assumption, induced by the defendant, and underlying a count dismissed pursuant to a plea bargain.

Finally, *Ohio v. Johnson* distinguished between the collateral estoppel effects of the two, very different, processes: "[T]he taking of a guilty plea is not the same as an adjudication on the merits after full trial, . . . [and] in a case such as this, where the State has made no effort to prosecute

the charges seriatim, the considerations of double jeopardy protection implicit in the application of collateral estoppel are inapplicable." *Id.* at 2542 n. 9. Martinez's reliance on *Bejar-Matrecios*, therefore, is not persuasive.

Even assuming that *Ashe v. Swenson* collateral estoppel is available, the facts of this case suggest that the "due diligence" exception might apply. Where "evidence ... was not discovered despite the exercise of due diligence before the first trial, or where all events necessary to prosecute the second offense had not occurred at the time the first prosecution was begun," *United States v. Solano,* 605 F.2d 1141, 1144 n. 1 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980), estoppel would not apply. Moreover, it is well-recognized that the operation of the double jeopardy clause may also be "affected by the actions of the defendant himself." *Garrett v. United States,* — U.S. ——, 105 S.Ct. 2407, 2421, 85 L.Ed.2d 764 (1985) (O'Connor, J., concurring). In *Jeffers v. United States,* 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977) (Blackmun, J.), a plurality of the Court determined that a second prosecution would not violate the double jeopardy clause where a defendant requested a separate trial, was found guilty of the lesser offense, and was then prosecuted for the greater offense. And *Ohio v. Johnson* makes the same point. *See* 104 S.Ct. at 2542.

■ Several witnesses testified that Martinez's true identity was not discovered until after he had pleaded guilty to 8 U.S.C. § 1325. *See* 2 R.T. at 125–26, 130. This delay in discovery of Martinez's identity cannot be considered a lack of due diligence; the government had circulated his fingerprints and photograph before the date that Martinez pleaded guilty. Furthermore, Martinez's own conduct is responsible for his predicament now. Had he not proffered a pseudonym during his interrogation in Arizona, he would not have been charged with falsely claiming United States citizenship. Nor would he now be

charged with making false statements to both federal officers and courts had he not originally tried to conceal his identity. It follows that the government's plea bargain arrangement in 1980, prior to the discovery of Martinez's true identity, does not collaterally estop the government from prosecuting Martinez for his false statements at Nogales.

■ Nor is the instant prosecution barred by the terms of the 1980 plea agreement. That plea agreement only included the government's offer to dismiss a felony count in return for Martinez's guilty plea to the misdemeanor of eluding inspection. The present false statement charges could not have formed part of the plea agreement because the government at the time of the bargain assumed that the "Reynoso-Diaz" identity was true. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), and its progeny are simply inapposite. The prosecutor did not violate any promise made to the defendant.

### B. *The Colorado Trial Argument*

■ Martinez's second double jeopardy argument contends that prosecution on his false statements charges is barred by his successful defense in the Colorado letter-bombing trials. The Colorado trial court admitted the testimony of the Arizona witnesses for its relevance with respect to Martinez's intent and his consciousness of guilt. But though the Arizona witnesses did testify in the Colorado proceeding, Martinez's acquittal on the letter-bombing incidents in no way established his innocence on the present charges. Even Martinez concedes that "[f]light was not an essential element of the crimes with which [he] had been charged in Colorado. . . ." Brief for Appellee at 17. Unless the present charges had been issues of ultimate fact or elements essential to conviction that were "necessarily decided in the first case," *United States v. Hernandez,* 572 F.2d 218, 220 (9th Cir.1978), the doctrine of collateral estoppel neither bars the instant charges nor precludes the government from litigat-

ing the issues of Martinez's identity and citizenship. *See United States v. McCoy*, 721 F.2d 473, 475 (4th Cir.1983), *cert. denied*, 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984).

■ It follows that neither double jeopardy argument has merit. Therefore, Martinez's jurisdictional argument—that 18 U.S.C. § 3731 (1982) prevents the United States from appealing where the double jeopardy clause is properly invoked—must fail.

IV.

THE VINDICTIVE
PROSECUTION CLAIM

In granting Martinez's motion to dismiss the present indictment "on the specific ground of the government's failure to rebut the presumption of vindictiveness which arose from the long delay and the chronological facts presented," 3 R.T. at 337–38, the court found that the prosecution had demonstrated no *actual* vindictiveness. Nonetheless, it concluded that actual vindictiveness is not required if "the second prosecution may reasonably be viewed as retaliatory or vindictive, and [if] this appearance will cause future defendants to be timorous in exercising their rights." *Id.* at 337. The government responds, first, that no reasonable likelihood of vindictiveness exists (and thus no presumption of vindictiveness may exist) when a defendant is prosecuted in two different districts for unrelated charges and, second, that if a

presumption of vindictiveness were warranted, the government had rebutted it.

The state of the law of vindictive prosecution is not entirely clear. Usually a presumption acts as an approximation for a not easily established actual fact.[1] In vindictive prosecution, on the other hand, both actual vindictiveness *and* the presumption of vindictiveness play separate and distinct roles.

■ The Supreme Court discussed this interplay in *Wasman v. United States*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). In dicta, the plurality indicated that actual vindictiveness could comprise the sole standard in those cases that did not fall in the same category as *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) —cases in which there was a reasonable likelihood of vindictiveness that would require rebuttal by the government.[2] *See* 104 S.Ct. at 3221–23. In this circuit, we have applied the presumption of vindictiveness when "it reflects the very real likelihood of actual vindictiveness." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1167 (9th Cir. 1982). In applying the presumption, we distinguish "cases involving increased charges or punishments after trial ... from cases in which the prosecution increases charges in the course of pretrial proceedings." *Id.; see United States v. Brooklier*, 685 F.2d 1208, 1215–16 (9th Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983). The "real likeli-

1. For example, a common permissive presumption is that a person intends the ordinary consequences of his actions. *See, e.g., United States v. Johnson*, 735 F.2d 373, 374 (9th Cir.1984) (per curiam) (upholding jury instructions with a permissive presumption of intent). This presumption arises because evidence of actual intent is virtually impossible to obtain.

2. Chief Justice Burger and Justices White, Rehnquist, and O'Connor concluded that actual vindictiveness was the sole standard to be applied in all but two situations: where the judge imposes a more severe sentence upon retrial, as in *North Carolina v. Pearce*, and where a prosecutor brings a greater indictment after a defend-

ant exercises his right to appeal a lesser conviction, as in *Blackledge v. Perry*. *See* 104 S.Ct. at 3221–23. In those two limited situations, the plurality felt that a presumption of vindictiveness would attach. *See id.* at 3223. Justices Powell, Blackmun, Brennan, and Marshall considered *Wasman* to be a "straightforward application" of *Pearce*, and they emphasized *Pearce's* concern with both actual vindictiveness and the presumption of vindictiveness. *See id.* at 3225–26. Justice Stevens viewed the plurality opinion as having incorrectly applied *Pearce* to the facts in *Wasman*, and he also emphasized the role of the presumption of vindictiveness in *Pearce*. *See id.* at 3226.

hood of actual vindictiveness," *Gallegos-Curiel*, 681 F.2d at 1167, is far more likely to occur when changes in sentencing or punishment appear after the initial prosecution than in a pretrial setting. *Compare Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (presumption of vindictiveness from increased severity of second indictment following appeal on first indictment), *and North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (presumption of vindictiveness on second sentencing), *with United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (no presumption of vindictiveness in pretrial setting), *and Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (no presumption of vindictiveness from increased severity of indictment when accused does not accept plea bargain in original indictment). These cases reflect a concern with both the actual vindictiveness that a defendant might face and the possibility that the conduct in question might deter future defendants from exercising their constitutional rights. It is the second concern that appears to lie behind the position taken by the district court in this case. This concern, however, must not be uncoupled from the possibility of vindictiveness; it is legitimate only when vindictiveness is a strong possibility. *Cf. United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982) (emphasizing that, in cases alleging post-trial vindictiveness, the Court " 'presume[s]' an improper vindictive motive ... only in cases in which a reasonable likelihood of vindictiveness exists").

Our cases illustrate this. Thus, if a prosecutor, faced with a disappointing result, acts so as to "up the ante" for the defendant, the presumption of vindictiveness arises and must be rebutted if the government is to prevail. *Cf. United States v.*

*Herrera*, 640 F.2d 958, 961 n. 6 (9th Cir. 1981) (court found no vindictive prosecution because government's action did "not increase the threat to the defendant in any way"). If the additional charge "aris[es] out of the same nucleus of operative facts as the original charge," a presumption of vindictiveness is raised. *United States v. Robison*, 644 F.2d 1270, 1272 (9th Cir.1981). If, however, the second charge is unrelated to the first, the presumption does not arise. *See id.* at 1273. In *United States v. Allen*, 699 F.2d 453 (9th Cir.1982), we held that the government's delay in bringing an indictment while it awaited "a disposition of an unrelated criminal prosecution" in a different district was insufficient to raise the presumption of vindictiveness. *See id.* at 460–61.[3] As we remarked in *United States v. Griffin*, 617 F.2d 1342 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980):

> Our concern for the deterrence factor cannot, however, be used in all cases as a shield against the legitimate requirements of the justice system with respect to a particular defendant.... Nothing in *Blackledge* [*v. Perry* ] presumed to give the defendant a free ride for separate crimes he may have committed, or to prevent a prosecutor from bringing new charges as a result of changed or altered circumstances which properly bear on prosecutorial discretion.

*Id.* at 1348.

 This teaching and that of *Allen* suggest that this case is an inappropriate one to invoke a presumption of vindictiveness in response to a desire to eliminate any deterrence of the assertion of constitutional rights. In this case, the charges of letter bombing and making false statements to officials are unrelated. The primary distinction between *Allen* and this

**3.** Martinez argues that *Allen* does not apply because "the indictment against [him] that led [him] to plead guilty to a misdemeanor count in September of 1980, and to his being sent to Colorado to stand trial," distinguished his situation from one in which the charges are entirely unrelated. Brief for Appellee at 29. We have already discussed the reasons why the 1980 guilty plea and the instant indictment are not related. Furthermore, the 1980 guilty plea did not "le[ad] ... to" the Colorado trial, since the Colorado misconduct had occurred years before. Therefore, Martinez's attempt to distinguish *Allen* fails.

case is that witnesses that would later be used in the Arizona indictment were called in the Colorado trial. This distinction, however, is of no import. Martinez could have exercised no right in the Colorado trial that would have affected the Arizona indictment. Assuming, *arguendo*, that the sole motive for bringing the Arizona indictment was the Colorado acquittal, the decision in *Allen* demonstrates that such a motive should not raise the presumption of vindictiveness. It is a legitimate prosecutorial consideration. The absence of actual vindictiveness, therefore, becomes decisive.

This conclusion is not impaired by the fact of the long delay between the original Arizona indictment and the indictment dismissed by the trial court in this case. This latter indictment did follow closely on the heels of the Colorado acquittal and was due to a prolonged FBI investigation and the discovery of Martinez's perjury. *See, e.g.,* 2 R.T. at 265–67. The Supreme Court has indicated that prosecutors are entitled to great leeway in their reasons for investigative delay. *See United States v. Lovasco,* 431 U.S. 783, 792–96, 97 S.Ct. 2044, 2049–52, 52 L.Ed.2d 752 (1977).[4] We see no reason in this case to set time limits for prosecutorial investigations beyond the limits that are already established by statutes of limitations. We, therefore, reverse the district court's dismissal of the indictment.

REVERSED.

---

**4.** In *Lovasco,* the Court listed a variety of "factors which the prosecutor may properly consider in exercising his discretion." 431 U.S. at 794 n. 15, 97 S.Ct. at 2051 n. 15. Among these was the "availability and likelihood of prosecution by another jurisdiction." *Id.* (quoting ABA Project on Standards for Criminal Justice, The Prosecution Function § 3.9(b) (App.Draft 1971)).