979 F.2d 856
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Daljit S. GILL, Defendant-Appellee.
 No. 90-10083.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 16, 1991.
Withdrawn from Submission Feb. 5, 1992.
Resubmitted Sept. 10, 1992.
Reargued by Telephone Sept. 22, 1992.
Decided Nov. 12, 1992.
As Amended on Denial of Rehearing Jan. 14, 1993.
 
 Before TANG, BOOCHEVER and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 On January 12, 1989, after a lengthy jury trial, Gill was convicted on seven counts of mail and wire fraud. Over the government's request for a sentence of fifteen years, the trial court sentenced Gill to five years imprisonment and to pay restitution of over $500,000 and costs of prosecution in the amount of $25,000. Substantial additional amounts of restitution were to be determined in subsequent proceedings. Gill timely filed a notice of appeal from the judgment of conviction.
 
 
 3
 During the course of the trial Gill took the stand and, in response to questions by the prosecutor, admitted making false statements on a $125,000 loan application to a federal savings and loan institution. The loan was repaid without any loss to that institution. During the pendency of the appeal from the mail and wire fraud convictions, Gill was indicted for making false statements on the federal loan application and for three counts of mail fraud in connection with that application. The prosecutor entered into plea bargaining negotiations with Gill on the bank fraud charges, conditioning a recommendation of a concurrent sentence on Gill's abandonment of his appeal on the initial mail and wire fraud case.
 
 
 4
 Gill moved to dismiss the bank fraud charges because of vindictive and selective prosecution, based on the appearance of vindictiveness from conditioning a plea in the mail fraud case on abandonment of the appeal in the preceding case and the apparent practice of the government not to prosecute defendants in similar circumstances of bank fraud where the loan was repaid in full prior to the filing of the charges. In response to the court's request that the government cite allegedly similar cases filed in the district, the government cited five false statement cases filed in the Northern District of California in which they alleged that there were no losses or negligible losses to the victims. None of those cases, however, involved repayment in full of the loan prior to the bringing of the charges.
 
 
 5
 We remanded the case to the district court to make more specific findings of fact. Upon remand, the court examined the prosecutor's memorandum recommending the filing of the second case and found that one of the considerations in bringing the second indictment was, in fact, the appeal in the first case. The court further found that the prosecutor's assertion that it was proper to bring the case in order to ensure that Gill would be convicted of some crime was not supported by the objective facts. There was evidence that the government was not overly concerned that the earlier conviction would be reversed but was concerned with the extraordinary amount of work that would be involved in the appeal. The court found that even though the prosecutor denied any discussion of the appeal as a consideration in filing the second case, the thwarting of the appeal was clearly the heart of the matter and, in fact, subsequently the prosecution conditioned the plea bargain in the second case on dropping the pending appeal. The court found that the circumstances demonstrated both the appearance of vindictiveness and an actual motive to deprive the defendant of his constitutional right to appeal irrespective of the prosecution's statements of subjective good faith.
 
 
 6
 The court further found that it was not aware of any prior case in which there had been a prosecution of a borrower based upon false statements on a loan application when the loan had been repaid in full. The court thus found that the prosecution was improperly selective and that it was initiated for the primary reason of depriving the defendant of his right to appeal. The court further found that the objective facts established to the court's satisfaction that the actual motive of the prosecution was vindictiveness.
 
 STANDARD OF REVIEW
 
 7
 After hearing argument in this appeal, we requested the parties to brief the appropriate standard of review in cases of selective and vindictive prosecution. The parties' briefs were helpful and in remarkable agreement. Although our prior opinions setting forth the standard of review in cases of vindictive and selective prosecution have engendered some confusion, they can be reconciled by reference to our en banc decision in United States v. McConney, 728 F.2d 1195 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). Subsequent cases relying on McConney are in accord with the views expressed by the parties to this appeal. See United States v. Clay, 925 F.2d 299, 302 (9th Cir.1991); United States v. Martinez, 785 F.2d 663, 668-70 (9th Cir.1986); United States v. Moody, 778 F.2d 1380, 1385 (9th Cir.1985), amended, 791 F.2d 707 (1986). We conclude that findings of historical facts and the actual motive for prosecuting are reviewed under the clearly erroneous standard. Once the motive is ascertained, the determination of whether it constitutes a basis for vindictive and selective prosecution is reviewed de novo. There is also a legal presumption of vindictiveness under some circumstances. Once the facts are established, we review de novo whether such a presumption arises. There is no such presumption in selective prosecution cases.
 
 DISCUSSION
 
 8
 Vindictive prosecution involves the government's attempt to punish a defendant for exercising a protected statutory or constitutional right. United States v. Goodwin, 457 U.S. 368, 372 (1982). To sustain a claim of selective prosecution, a defendant must prove that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive such as the deprivation of constitutional rights. United States v. Lee, 786 F.2d 951, 957 (9th Cir.1986).
 
 
 9
 A presumption of vindictive prosecution has been found under very limited circumstances in which action detrimental to the defendant has been taken after the defendant's exercise of a legal right. See Goodwin, 457 U.S. at 373. The classical examples are Blackledge v. Perry, 417 U.S. 21 (1974) (presumption of vindictiveness from increased severity of second indictment following appeal of first indictment), and North Carolina v. Pearce, 395 U.S. 711 (1969) (presumption of vindictiveness from increased sentence on reconviction). This circuit has applied the presumption of vindictiveness when we find a " 'very real likelihood of actual vindictiveness.' " United States v. Martinez, 785 F.2d 663, 668 (9th Cir.1986) (quoting United States v. Gallegos-Curiel, 681 F.2d 1164, 1167 (9th Cir.1982)).
 
 
 10
 When we review de novo the district court's holding of a presumption of vindictiveness, we cannot say that the facts of Gill's prosecution come within these limited circumstances. Furthermore, we have previously stated that the presumption does not arise where an additional, allegedly vindictive charge is unrelated to the original charge. Id. at 669. We conclude that the court erred in finding a presumption of vindictiveness based on the filing of the second complaint.
 
 
 11
 In United States v. Martinez, 785 F.2d 663 (9th Cir.1986), we indicated that actual vindictiveness involved a separate inquiry from the presumption. In that case, the trial judge specifically found no actual vindictiveness, but went on to base his decision on the presumption. We reversed, finding that no presumption arose. Having so decided, we held that "[t]he absence of actual vindictiveness, therefore, becomes decisive." Id. at 670. We are thus left with a decision in this case whether the district court's finding of actual vindictiveness was clearly erroneous.
 
 
 12
 Under the clearly erroneous standard of review, an appellate court must accept the lower court's findings of fact unless upon review the appellate court is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985)), cert. denied, 112 S.Ct. 3056-57 (1992). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings ... are based ... [on] inferences from other facts." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) (citations omitted).
 
 
 13
 The district court's findings on remand were in large part a verbatim transcription of those proposed by Gill. We have stated that "[w]holesale adoption of the prevailing party's proposed findings" calls for "more careful scrutiny" due to "the possibility that there was insufficient independent evaluation of the evidence."
 
 
 14
 Photo Elecs. Corp. v. England, 581 F.2d 772, 776-77 (9th Cir. 1978). In this case, however, the district court made alterations to many paragraphs, including a complete rewriting of the finding of selective prosecution in p 19. Although other alterations were relatively minor, they are adequate to assure us that the court independently and carefully reviewed the proposed findings and "that the findings issued by the District Court represented the judge's own considered conclusions." Anderson, 470 U.S. at 573. Moreover, the Supreme Court has stated that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Id. at 572; see also Photo Elecs. Corp., 581 F.2d at 777 (clearly erroneous standard applies to adopted findings); Unt v. Aerospace Corp., 765 F.2d 1440, 1445 (9th Cir. 1985) ("The verbatim adoption of findings suggested by a party is not automatically objectionable . . . so long as those findings are supported by the record.").
 
 
 15
 When the facts of this case are reviewed with all permissible inferences, we cannot find the district court's finding of actual vindictiveness to be clearly erroneous. It was only after Gill appealed his fraud conviction that he was indicted for making false statements on the loan application. The supervisor of the prosecutor who secured the second indictment declared that the second charge was brought "to insure that Gill stood convicted of some offense even if he was successful in the appeal of his first case." Thus, in effect, the government conceded that the second case would never have been filed had Gill's first conviction not been appealed. The district court then was required to determine whether the second case was filed for the purpose claimed by the government or to coerce Gill to forego his constitutional right to appeal. This was a question of fact, and it was up to the district court to determine if the reason advanced by the government was genuine. In light of the unlikelihood that the government would otherwise have filed the bank fraud case and the government's subsequent use of the new indictment to bargain with Gill to abandon his appeal in the first case, one reasonable inference is that the second case was filed because Gill had appealed the earlier conviction and for the purpose of coercing Gill to abandon that appeal. We cannot say that the district court's finding of vindictive prosecution was clearly erroneous.
 
 
 16
 Nor do we find clear error in the district court's finding of selective prosecution. A second charge was brought against Gill under circumstances under which no charges had previously been filed in the district, although the offense of bank fraud is a common one. The loan had previously been repaid in full. Although the court asked the government to cite similar cases, no other case was cited to the court, prior to the issuance of its order of dismissal, in which prosecution occurred after there had been full repayment of a loan. Under these circumstances, a reasonable inference is that the government selected Gill for prosecution on the second charge to coerce him to abandon his constitutional right to appeal. Accordingly, we cannot conclude that the district court's findings were clearly erroneous.
 
 CONCLUSION
 
 17
 Based on these findings, we AFFIRM the dismissal of the second case because of selective and vindictive prosecution.
 
 NOONAN, Circuit Judge, dissenting:
 
 18
 The history of this case is relevant to its merits on appeal. On March 28, 1989 Gill was convicted of fraud in violation of 18 U.S.C. §§ 1341 and 1343. He was sentenced to prison for five years and to five years of probation following his imprisonment and further ordered to make restitution of over $500,000 to various airlines he had defrauded in a scam run through his travel agency. On March 30, 1989 he filed an appeal from these convictions.
 
 
 19
 On July 7, 1989 Gill was indicted and charged with one count of violating 18 U.S.C. § 1014 and three counts of violating 18 U.S.C. § 1341. This indictment was based on false statements he had made as the co-signer on a loan application to Glendale Federal Savings and Loan Association in July 1984. The false statements charged were that he had stated his monthly income as $1,450, which it was not, and that he was the manager of Bazaar of India, when he was not.
 
 
 20
 On October 23, 1989 the prosecution offered to recommend "concurrent time" if Gill pleaded guilty to one count of the false statements indictment and if, in addition, Gill abandoned his appeal from his fraud convictions.
 
 
 21
 On November 21, 1989 Gill moved to dismiss the false loan application indictment on the grounds that it was a selective and vindictive prosecution. The district court held a hearing on December 10, 1989. The court marvelled at the indictment, commenting that in 22 years the court had never seen an indictment for a false loan application when the loan had been fully repaid and had not resulted in any loss. The court ordered discovery and directed the government to produce evidence of similar prosecutions.
 
 
 22
 The United States responded by producing five cases in which it had charged crimes in the making of false loan applications, even though no losses had resulted from the applications. The government also submitted under seal its "Prosecution Memo" prepared by the Assistant United States Attorney who had sought the indictment. This document was remarkably uninformative as to why the government had sought to prosecute. It simply stated the substance of the offense charged and the penalties for it.
 
 
 23
 In addition, the government filed the declaration of the group supervisor in the United States Attorney's Office who had approved the seeking of the indictment. He declared that several facts had indicated that Gill should be indicted: he was "a repeat offender," who had engaged in a large fraud resulting in the loss of hundreds of thousands of dollars; he had obtained real estate loans using false statements and he had attempted to post the real estate as bail; and the case would be easy to prosecute because Gill, under cross-examination in the fraud trial, had admitted the falsity of the statements on the loan application to Glendale. The declaration further stated,
 
 
 24
 I believe it was proper to bring the case to insure that Gill stood convicted of some offense even if he was successful in the appeal of his first case. There was never any discussion that the second case would be used to cause Gill to surrender his right to appeal the first case. However, if the first conviction were reversed on appeal, having the second conviction would give the government the option of foregoing a re-trial of the first case which had been a difficult, drawn-out trial. Furthermore, if the defendant was successful on appeal, the existence of a second charge or conviction would provide added incentive to the defendant to plead guilty rather than insist on a re-trial of the first case.
 
 
 25
 A second hearing was held before the district court on January 5, 1990. At this hearing the district court observed that it was proper for the government to seek to have "a second string to its bow" so that if it lost the appeal in the first case it could still get a conviction of the defendant. The court also thought it proper for the government to use the second case as a bargaining chip in dealing with the defendant. But the court found the cases submitted by the government as similar to Gill's were not similar. The court also declared that the case had been brought against Gill "only after the assertion of a constitutional or a procedural right in order to gain some leverage over the [first] case." The court held that to be "not proper." Without further findings the court declared that indictment had been both selective and vindictive and on January 9, 1990 entered an order so holding and dismissing the indictment. The government appealed.
 
 
 26
 We remanded, directing the district court "to make specific findings addressing the actual motive of the prosecutor and the application of the presumption of vindictiveness."
 
 
 27
 On remand the district court held a hearing and then adopted wholesale the text of the proposed findings submitted by Gill. The court found as facts the following:
 
 
 28
 "9. The prosecutor admitted conditioning a plea of guilty as to the charges herein on the defendant's abandonment of his appeal in case no. CR-87-784-RFP (United States Court of Appeals No. 89-10156), in exchange for recommending a concurrent sentence. He denied any improper motive.
 
 
 29
 "10. This Court found that the defendant had established a colorable claim of vindictive and selective prosecution, which entitled him to discovery of certain information regarding the prosecutor's decision to file this indictment, based upon the appearance of vindictiveness from conditioning a plea in this case on abandonment of the appeal in the preceding case and the apparent practice of the government not to prosecute similarly situated defendants in similar circumstances....
 
 
 30
 "12. The Court finds that the Bail/Prosecution Memo contains no information which would tend to overcome the presumption of vindictiveness. It merely recites that the defendant admitted the offense under oath and that the government would seek a concurrent sentence. Neither does the Order Requesting Sureties shed any light on the issues before the Court.
 
 
 31
 "13. The Court finds that the memorandum regarding allegedly similar cases contains no case that seems remotely like this one. None of them is similar to the instant case, wherein a defendant fully paid back a loan, having made false statements originally to secure the loan. Rather, in the cited cases no loss occurred, not because of the responsible attitude of the offender, but because the offender was apprehended before he or she could complete the attempted fraud or embezzlement.
 
 
 32
 "14. The Court finds that [the supervisor] memo demonstrates that one of the considerations in bringing the second indictment was, in fact, the appeal in the first case, and it was followed up by making the offer to condition favorable treatment in the second case on the abandonment of the appeal in the first case....
 
 
 33
 "16. The Court finds that even though [the supervisor] denied any discussion of the appeal as a consideration in filing the second case, and [the prosecutor] stated it was not his intention to thwart the appeal, it was clearly the heart of the matter, and, in fact, subsequently [the prosecutor] did condition the plea bargain on dropping the appeal and asserted herein that it was proper to do so.
 
 
 34
 "17. The Court finds that given the fact that no loss occurred from the charges in the second case and the age of the offense, it would be unlikely that the defendant would be sentenced to prison if convicted in any event, regardless of the disposition of the first case. Thus the second case could not serve as a substitute for the conviction in the first or an inducement to plead guilty if the appeal resulted in reversal of the first case.
 
 
 35
 "18. The Court finds that the circumstances demonstrate both the appearance of vindictiveness and an actual motive to deprive the defendant of his constitutional right to appeal, irrespective of the prosecutors' statements of subjective good faith. ( See, United States v. Motley, 655 F.2d 186, 190 (9th Cir.1981).)
 
 
 36
 "19. The Court is not aware (despite nearly 50 years of contact with criminal charges and the practices of the United States Attorney's office) of any prior case in which there has been a prosecution of a borrower who fully complied with the loan obligations and who paid off the loan in full, based upon false statements in the loan application. The Court finds the prosecution here was improperly selective, and for the primary reason of depriving defendant of his appeal."
 
 
 37
 These findings of fact were clearly erroneous. This conclusion would be reached even if we were not under a duty to subject such findings, ghosted by defendant's counsel, to careful scrutiny. L.K. Comstock & Co. v. United Eng. & Contractors, Inc., 880 F.2d 219 at 222 (9th Cir.1989). A judicial officer should not uncritically accept the offerings of counsel. Id. A fortiori, this court should not uncritically accept conclusory statements drafted by counsel as though they were the judicial determination of actual facts.
 
 
 38
 To begin with, the court operated, as is clear from Finding 12, with a "presumption of vindictiveness." This presumption was created in the court's mind by the prosecutor "conditioning a plea of guilty as to the charges herein on the defendant's abandonment of his appeal." But the court had earlier, in the January 5, 1990 hearing, expressed its opinion that it was proper for the government to use the second case as a bargaining chip in dealing with the defendant. The court equally had expressed the view that there was nothing improper in the government securing the indictment in this case to add a second string to its bow. The court was correct in these earlier conclusions.
 
 
 39
 Once the indictment was in place, there was also nothing improper in the government using it as a bargaining chip. It wasn't much of a chip; no leverage over the appeal in the first case was gained. All the government could offer was dismissal of an indictment where the likely penalty was, at most, probation; in exchange the defendant would have been giving up a chance for reversal of a five year sentence of imprisonment and an order to make substantial restitution. The district court itself in findings of fact number 17 emphasizes how weak the inducement was by noting that it would be unlikely that the defendant would be sent to prison if convicted in the second case. In short, the bringing of this case cannot rationally be considered to have been a deterrent to the defendant's appeal of his conviction of other far more serious crimes.
 
 
 40
 The district court found that the prosecution was selective only because the district court made a distinction between cases where a dishonest borrower had been caught before the loss was complete and a case where the dishonest borrower was able to, and did, repay the loan. No doubt there is a distinction, but it is scarcely a material distinction. What the cases show is that fraud on a bank will be punished whether it results in actual loss or not. The reason for prosecution is a good one. The dishonest borrower who does not actually inflict loss upon the bank still deprives other honest borrowers of the availability of the credit that has been secured to him by the dishonesty. It is to rewrite the law to say that a dishonest borrower may not be prosecuted if he lucks out and manages to repay what he has obtained by fraud. The district court's finding that none of the five cases offered by the government appear "remotely like this one" is a substantial distortion of the evidence. Except for an immaterial distinction, the cases are similar.
 
 
 41
 It is important for a court to be as fair as possible to a person charged with crimes. It is equally important for a court to be fair to the attorneys who serve it. The government lawyers are entitled to vindication of their reputation.
 
 
 42
 I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3