**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pedro Arias HERNANDEZ,
Defendant–Appellant.**

No. 95–30007.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1995.

Decided Jan. 31, 1996.

Arturo Hernandez, San Jose, California, for defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, Montana, for plaintiff-appellee.

Before: BOOCHEVER, FERNANDEZ and KLEINFELD, Circuit Judges.

## OPINION

BOOCHEVER, Circuit Judge:

On September 27, 1994, a jury returned guilty verdicts against Pedro Arias Hernandez on one count of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (1994), and on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (1994). The charges were based on events that took place on April 27, 1989, and evidence seized pursuant to a search warrant issued that same day.

On appeal, Hernandez argues that (1) the evidence was insufficient to support the § 924(c)(1) conviction because he did not "use" or "carry" a firearm; (2) the § 924(c)(1) charge should have been dismissed because the government did not charge a separate drug trafficking crime, and that crime is now beyond the statute of limitations; (3) the evidence seized should have been suppressed because the search warrant lacked probable cause; (4) the evidence seized should have been suppressed because the search warrant affiant deliberately or recklessly included false statements in and omitted material information from the search warrant application; (5) the government has engaged in vindictive prosecution; and (6) the district court should have held a hearing on the issue of double jeopardy.

This appeal presents our first opportunity to interpret the meaning of the terms "use" and "carry" for purposes of 18 U.S.C. § 924(c)(1) since the Supreme Court's decision in *Bailey v. United States*, — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). As discussed below, to establish "use" under section 924(c)(1), the government must show active employment of the firearm. The word "carry" requires the firearm to be on or about the defendant's person.

Under this interpretation, we find that the evidence was insufficient to support Hernandez's conviction under 18 U.S.C. § 924(c)(1), because Hernandez did not "use" or "carry" a firearm during and in relation to a drug trafficking crime. Because Hernandez's remaining arguments provide no basis for reversing or vacating his conviction for being a felon in possession of a firearm, we affirm his conviction on that charge.

### FACTS

On April 27, 1989, at the direction of agents from the Montana Criminal Investigation Bureau (MCIB) and the Federal Bureau of Investigation (FBI), a confidential informant (CI) placed a monitored call to Hernandez in an attempt to arrange a drug purchase. The CI convinced Hernandez to meet so that the CI could repay a preexisting debt. During the monitored phone call, Hernandez denied having any drugs to sell to the CI.

After meeting at a prearranged location, the CI and Hernandez travelled to Hernandez's auto body shop (the garage). Through a transmitter worn by the CI, MCIB Agent Reed Scott (Agent Scott) heard the sounds of a scuffle inside the garage. The agents forced their way into the garage and arrested Hernandez.

Tim Henneberry, who was involved in the auto body business with Hernandez, was present in the garage when the agents entered. Henneberry informed Agent Scott that there had been an altercation and that Hernandez had struck the CI with a pipe. The CI confirmed Henneberry's account.

In response to Agent Scott's inquiries regarding the presence of drugs in the garage, Henneberry stated that he was personally unaware of any cocaine in the garage but that in the past, he had seen Hernandez sell cocaine there. Henneberry also stated that he had seen Hernandez take small quantities of cocaine from a red toolbox in the past. Agent Scott observed a red toolbox bearing Hernandez's name in the garage. Based on these facts and Henneberry's statements, Agent Scott submitted a sworn application for and received a warrant to search the garage that same day, April 27, 1989. (Henneberry subsequently denied having made the statements regarding the sale of drugs in the garage.) Hernandez pled guilty in Montana district court to felony assault and criminal possession of drugs. No federal charges

were brought against Hernandez at that time.

On June 17, 1993, however, the federal government brought a four-count indictment against Hernandez based on events unrelated to those occurring on April 27, 1989. A jury found Hernandez guilty on two counts and not guilty on two counts.

On March 17, 1994, the federal government indicted Hernandez in the present action, charging him with two counts based on the events of April 27, 1989. Hernandez made motions to suppress the evidence seized from the garage and to have the indictment dismissed for vindictive prosecution and double jeopardy. The district court denied these motions after holding a *Franks* hearing. A jury then found Hernandez guilty on both counts, and he appeals.

## DISCUSSION

### 1. *Sufficiency of the Evidence*

Hernandez claims that the evidence was insufficient to support his conviction on Count I for using or carrying a firearm during and in relation to a drug trafficking crime. Hernandez argues that the government failed to establish that he "used or carried" a firearm, because the gun was inside a locked toolbox during the time of the relevant drug trafficking crime.

■ Section 924(c)(1) requires the imposition of enhanced penalties if the defendant "during and in relation to any crime of violence or drug trafficking crime ... *uses or carries* a firearm...." 18 U.S.C. § 924(c)(1) (emphasis added). There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Vgeri*, 51 F.3d 876, 879 (9th Cir.1995).

■ In its recent decision in *Bailey*, the Supreme Court stated that "a conviction for 'use' of a firearm under § 924(c)(1) requires more than a showing of mere possession...." *Bailey*, —— U.S. at ——, 116 S.Ct. at 506. To establish "use" under section 924(c)(1), the government must show "an active employment of the firearm." *Id.* at ——, 116 S.Ct. at 505. "The active-employment understanding of 'use' certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. It, however, does not encompass the action in which a defendant hides a gun where he can grab and use it if necessary, unless the defendant makes a reference to the gun in his possession "calculated to bring about a change in the circumstances of the predicate offense." *Id.*

■ Here, the government's only evidence that Hernandez "used" a firearm was that he strategically placed a firearm in close proximity to his drugs. The gun was located in the garage in a locked toolbox that contained cocaine, and Hernandez made no reference to it during the relevant time period. Although the gun might have emboldened Hernandez to take action relating to the drugs, Hernandez did not "use" the gun as the term has been defined by the Supreme Court for purposes of section 924(c)(1). "[T]he inert presence of a firearm, without more, is not enough to trigger [the 'use' prong of] § 924(c)(1)." *Id.* To the extent that our prior decisions are to the contrary, they have been overruled. *See United States v. Torres–Medina*, 935 F.2d 1047 (9th Cir. 1991); *United States v. Torres–Rodriguez*, 930 F.2d 1375 (9th Cir.1991) (as amended); *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985).

■ "The 'carry' prong of § 924(c)(1) ... brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Bailey*, —— U.S. at ——, 116 S.Ct. at 509. Still, the word "carry" in the statute must be given its "ordinary or natural" meaning. *See id.* at ——, 116 S.Ct. at 506. Webster's defines "to carry" as "to move while supporting" or "to hold, wear or have upon one's person." *Webster's Third New International Dictionary of the English Language* 343 (3d ed. 1976). Black's Law Dictionary defines "to carry" as "[t]o have or bear upon or about one's person," and defines "to carry arms or weapons" as "[t]o wear, bear, or carry them upon the person or

in the clothing or in a pocket, for the purpose of use...." *Black's Law Dictionary* 214 (6th ed. 1990). These definitions suggest that the term "carry" involves activity beyond mere possession. *See Bailey,* —— U.S. at ——, 116 S.Ct. at 506 (quoting *United States v. McFadden,* 13 F.3d 463, 467 (1st Cir.1994) (Breyer, C.J., dissenting) ("the ordinary meanings of the words 'use' and 'carry' ... connote activity beyond simple possession")). *See also Torres–Medina,* 935 F.2d at 1049 n. 2 (noting desire to avoid application of principles of constructive possession in section 924(c)(1) analysis).

We conclude that in order for a defendant to be convicted of "carrying" a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his or her person. *See United States v. Riascos–Suarez,* 73 F.3d 616, 623 (6th Cir.1996); *see also Bailey,* —— U.S. at ——, 116 S.Ct. at 508 (recognizing possible importance of distinction between firearm's accessibility to drugs, and its accessibility to defendant). This means the firearm must have been immediately available for use by the defendant. *See Riascos–Suarez,* 73 F.3d at 623.

■ In the present case, Hernandez did not keep "a gun hidden in his clothing throughout a drug transaction." *See Bailey,* —— U.S. at ——, 116 S.Ct. at 507. Rather, as noted above, the gun was located in the garage in a locked toolbox. Although the gun may have emboldened Hernandez to commit the underlying offense, Hernandez did not transport the gun on or about his person, and the gun, therefore, was not immediately available for his use. Consequently, we cannot find that Hernandez carried a firearm for purposes of section 924(c)(1).

Because Hernandez did not "use" or "carry" a firearm as those terms are defined for purposes of section 924(c)(1), we conclude that the evidence was insufficient to support his conviction on Count I.

2. *Predicate Offense for 18 U.S.C. § 924(c)(1)*

Hernandez argues that the district court should have dismissed Count I of the indictment, charging Hernandez with violating 18 U.S.C. § 924(c)(1) for using or carrying a firearm in relation to a drug trafficking crime, because the government did not charge a separate drug trafficking crime as a predicate offense. Hernandez also argues that Count I should have been dismissed because the predicate drug trafficking crime is now beyond the statute of limitations. Because we have already found that the evidence was insufficient to support Hernandez's conviction under 18 U.S.C. § 924(c)(1), we need not address these arguments.

3. *Probable Cause for the Search Warrant*

Hernandez claims that the district court should have suppressed the evidence seized from the garage because the warrant authorizing the search lacked probable cause. Hernandez argues that nothing in the affidavit stated that a drug deal was ever made at the garage; the affidavit was silent as to when Henneberry had last seen cocaine in the toolbox; and statements made by Henneberry after the warrant was issued contradicted the statements attributed to him in the search warrant application.

■ Probable cause exists where the facts are sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued. *United States v. Greany,* 929 F.2d 523, 524–25 (9th Cir.1991). We review *de novo* the district court's determination that there was probable cause. *United States v. Nance,* 962 F.2d 860, 864 (9th Cir.1992) (per curiam) (as amended).

■ "Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location." *United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986). It is enough that it be reasonable to seek the evidence in the place indicated in the affidavit. *United States v. Terry,* 911 F.2d 272, 275 (9th Cir.1990) (as amended).

■ In the present case, it was proper for the district court to uphold the issuance of the search warrant. According to the sworn search warrant application, Henneberry stated that he had seen Hernandez sell

drugs from the garage in the past, and that he had seen Hernandez take small quantities of cocaine from a red toolbox. Agent Scott observed a red toolbox bearing Hernandez's name in the garage. Based on this information, there was probable cause to believe that drugs would be found in the garage.

■ Issuance of the warrant was not improper simply because the affidavit was silent as to when Henneberry had last seen cocaine in the toolbox. One may infer that equipment acquired to accomplish a crime will be kept for some period of time. *Greany*, 929 F.2d at 525. "With respect to drug trafficking, probable cause may continue for several weeks, if not months, [from] the last reported instance of suspect activity." *Angulo–Lopez*, 791 F.2d at 1399. Henneberry's statements made it reasonable to infer that drugs would be located in the garage on April 27, 1989.

■ Although Henneberry, at trial, made statements contradicting the statements attributed to him in the search warrant application, those contradictory statements did not render the decision to issue the search warrant improper. In reviewing the issuance of a search warrant, "we are limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Bertrand*, 926 F.2d 838, 841 (9th Cir.1991) (quotation omitted). Henneberry did not make the contradictory statements until two days after the search warrant had been issued. Accordingly, the contradictory statements were not part of the search warrant application, and we do not consider them when reviewing the decision to issue the search warrant.

Based on the information in the search warrant application, there was probable cause to issue the search warrant. Therefore, subject to the challenge to the truthfulness and completeness of the affiant's statements in the search warrant application, the district court properly denied Hernandez's motion to suppress the evidence seized from the garage on April 27, 1989.

### 4. *The Franks Hearing*

Hernandez contends that the district court committed error at the *Franks* hearing when it found that Agent Scott did not deliberately or recklessly include false statements in the search warrant application. *See United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir.) (applying *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)), *cert. denied*, —— U.S. ——, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995). Hernandez points out inconsistencies between the statements attributed to Henneberry in Agent Scott's affidavit and the statements subsequently made by Henneberry at trial. Hernandez also argues that the district court erred when it found that Agent Scott did not deliberately omit material information from the search warrant application. *See id.* Specifically, Hernandez claims that Agent Scott did not include Hernandez's refusal to sell drugs to the CI in the search warrant application.

### A. *Statements Attributed to Henneberry*

Agent Scott based his affidavit on statements allegedly made by Henneberry on April 27 that he had seen Hernandez sell drugs out of the garage. At the trial, Henneberry denied that he had seen Hernandez sell drugs out of the garage, but did not testify whether he had told Agent Scott on April 27 that Hernandez had so sold the drugs. The district court conducted a *Franks* hearing to determine whether Agent Scott had recounted truthfully Henneberry's statements in the search warrant application, or whether Henneberry's statements at trial indicated that Agent Scott had not been truthful in the application.

At the *Franks* hearing, Agent Scott testified that Henneberry made the statements attributed to him in the search warrant application. Agent Scott testified that Henneberry subsequently made inconsistent statements at trial because the prosecution had advised Henneberry to limit his testimony in order to avoid references to Hernandez's prior bad acts. Henneberry did not appear at the *Franks* hearing. The defense did not call Henneberry to deny that he made the statements attributed to him in the search warrant application, and the government did

not call Henneberry to testify that he omitted references to Hernandez's prior bad acts at the direction of the prosecution.

■ At the conclusion of Agent Scott's testimony, the district court concluded that Agent Scott did not intentionally or recklessly include false information in the search warrant application. Whether false statements are intentional or reckless is a factual finding reviewed under the clearly erroneous standard. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir.) (as amended), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988).

■ Hernandez had the burden of proving Agent Scott's perjury or reckless disregard of the truth by a preponderance of the evidence. *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676–77. Thus, Hernandez was probably the one responsible for the decision not to call Henneberry as a witness at the *Franks* hearing. Further, the district court judge had heard Henneberry's testimony under oath at the trial and was able to evaluate that testimony in comparison with Agent Scott's testimony at the *Franks* hearing. Therefore, although it may have been preferable for Henneberry to testify at the *Franks* hearing, it was within the judge's power to decide that Henneberry's testimony was not credible without requiring Henneberry to repeat under oath that which he had just previously stated under oath at trial. Consequently, the district court did not clearly err in finding that Agent Scott did not deliberately or recklessly include false statements in the search warrant application.

### B. *Hernandez's Refusal to Sell Drugs to the CI*

■ Agent Scott deliberately failed to disclose in the search warrant application that Hernandez denied having drugs to sell to the CI and that the CI arranged to meet Hernandez to repay a debt, not to buy drugs. To assess the materiality of the omitted information, we must consider the affidavit with the omitted information included. *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992). This determination of whether the omissions were material to the "determination of probable cause is a mixed question

of law and fact, subject to *de novo* review." *Id.* at 763.

The affidavit, revised to include the omitted information, would indicate that the CI arranged a meeting with Hernandez on April 27, 1989 to repay a debt; Hernandez denied having any drugs to sell to the CI; the CI did not believe Hernandez's denial; no one had personal knowledge that drugs were in the garage on April 27, 1989; at some time in the past, Henneberry had seen Hernandez use and sell cocaine in the garage; at some time in the past, Henneberry had seen Hernandez take small quantities of cocaine from a red toolbox; and Agent Scott saw a red toolbox bearing the name of Pedro Hernandez in the garage on April 27, 1989.

■ Although the revised information in the affidavit is less convincing, it still is sufficient to establish probable cause to search the garage for drugs on April 27, 1989. Both the CI and Henneberry had preexisting relationships with Hernandez, which provides a basis for believing their statements. Further, Agent Scott independently corroborated part of Henneberry's account following the assault by identifying the red toolbox in the garage. Consequently, the district court did not err when it concluded that the information omitted from the search warrant application was not material.

### 5. *Vindictive Prosecution*

Hernandez argues that the government engaged in vindictive prosecution by charging him in the present action after failing to prosecute him successfully on two unrelated counts in an earlier prosecution.

The standard of review in a vindictive prosecution case remains unsettled in this circuit. *United States v. Montoya*, 45 F.3d 1286, 1291 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995). This circuit has variously applied abuse of discretion, clearly erroneous, and *de novo* standards. *Id.* We need not resolve which standard should apply because under any of these standards, Hernandez's claim fails.

■ "To establish a prima facie case of prosecutorial vindictiveness, a defendant

must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *Id.* at 1299 (quotations omitted). Hernandez has offered no evidence that shows actual vindictiveness on the part of the prosecution. Therefore, for Hernandez's claim to succeed, he must show that the facts warrant finding an appearance of vindictiveness.

 The law of the Ninth Circuit precludes finding an appearance of vindictiveness on the basis of the government's decision to prosecute following a losing prosecution for unrelated conduct. *See United States v. Martinez,* 785 F.2d 663, 668–70 (9th Cir.1986). In *Martinez,* we held that if a prosecutor, faced with a disappointing result brings an additional charge which "arises out of the same nucleus of operative facts as the original charge, a presumption of vindictiveness is raised. If, however, the second charge is unrelated to the first, the presumption does not arise." *Id.* at 669 (quotations and citation omitted). The resolution of an unrelated prosecution "is a legitimate prosecutorial consideration." *Id.* at 670.

The charges brought against Hernandez in the present action were based on events that occurred on April 27, 1989. Because the unsuccessful prosecution, which Hernandez contends prompted the present action, arose out of events unrelated to those occurring on April 27, 1989, we do not find an appearance of vindictiveness. Accordingly, the district court did not err in denying Hernandez's motion to dismiss for vindictive prosecution.

6. *Double Jeopardy*

Hernandez claims that the district court should have held a hearing on the issue of double jeopardy at the time of sentencing, because of the "forfeiture" of the firearm found in the garage. The district court's denial of a motion for a hearing is reviewed for an abuse of discretion. *Montoya,* 45 F.3d at 1291.

Hernandez presented no evidence that the government ever held a forfeiture proceeding, either administrative or judicial,

regarding the firearm. Accordingly, no double jeopardy issues exist, even in light of this circuit's decision in *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir. 1994), *amended and reh'g denied,* 56 F.3d 41 (1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). Therefore, the district court did not abuse its discretion in denying Hernandez's request for a hearing on the issue of double jeopardy.

*CONCLUSION*

Because the evidence was insufficient to support Hernandez's conviction for using or carrying a firearm during and in relation to a drug trafficking crime, we reverse his conviction on Count I. Because Hernandez's remaining arguments on appeal provide no basis for reversing or vacating his conviction for being a felon in possession of a firearm, we affirm his conviction on Count II.

AFFIRMED in part, REVERSED in part, and REMANDED for resentencing.