UNITED STATES, Appellee,

v.

Felipe RAMIREZ–FERRER,
Defendant–Appellant.

UNITED STATES, Appellee,

v.

Jorge L. SUAREZ–MAYA,
Defendant–Appellant.

UNITED STATES, Appellee,

v.

Raul TROCHE–MATOS, Defendant–
Appellant.

Nos. 94–1016 to 94–1018.

United States Court of Appeals,
First Circuit.

Heard Nov. 10, 1994.

Decided April 29, 1996.

Roxana Matienzo–Carrión, Hato Rey, PR, by Appointment of the Court, for appellant Felipe Ramírez–Ferrer.

Ramón García–García, Santurce, PR, for appellant Jorge L. Suárez–Maya.

Francisco Serrano–Walker, New York City, for appellant Raúl Troche–Matos.

Kathleen A. Felton, Attorney, Department of Justice, Washington, DC, with whom Guillermo Gil, United States Attorney, Hato Rey, PR, José A. Quiles–Espinosa, Senior Litigation Counsel, San Juan, PR, and Epifanio Morales–Cruz, Assistant United States Attorney, Cagus, PR, were on supplemental brief for, appellee.

Before TORRUELLA, Chief Judge, and CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

TORRUELLA, Chief Judge.

Defendants-appellants (collectively, "defendants") Felipe Ramírez–Ferrer ("Ramírez–Ferrer"), Jorge L. Suárez–Maya ("Suárez–Maya"), and Raúl Troche–Matos ("Troche–Matos") appeal their firearm convictions under 18 U.S.C. § 924(c)(1). A previous panel of this court affirmed the convictions of Ramírez–Ferrer and Suárez–Maya for using a firearm in relation to a drug trafficking offense, but reversed a corresponding conviction of Troche–Matos. However, the original panel's opinion was withdrawn when the government's petition for an *en banc* was granted. The government has decided not to contest the original panel's reversal of Troche–Matos' conviction. As a result, we reiterate that holding; our focus is on the appeals of Ramírez–Ferrer and Suárez–Maya.

Although the firearm convictions were also to be reconsidered *en banc,* after the *en banc*

oral argument was heard but before the *en banc* opinion was issued, the Supreme Court rendered its opinion in *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 505, 133 L.Ed.2d 472 (1995), clarifying the meaning of section 924(c)(1). In light of *Bailey,* the *en banc* court remanded the firearm convictions for the panel's consideration. We today affirm the convictions of Ramírez–Ferrer and Suárez–Maya.

## I. BACKGROUND

The evidence, taken in the light most favorable to the government, *United States v. Abreu,* 952 F.2d 1458, 1460 (1st Cir.), *cert. denied,* 503 U.S. 994, 112 S.Ct. 1695, 118 L.Ed.2d 406 (1992), permitted the jury to find the facts that follow. Because the *en banc* decision affirmed related drug possession convictions and reversed drug importation convictions for all three defendants, the sole remaining issue is the validity of the firearm convictions for using or carrying a firearm during and in relation to a drug trafficking crime pursuant to section 924(c)(1). Thus, we emphasize the facts pertinent to the firearms charge.

On March 13, 1993, the Police of Puerto Rico ("POPR") received an anonymous telephone call. The caller informed the POPR that defendant Suárez–Maya and three other individuals planned to bring a load of cocaine by boat to the main island of Puerto Rico. Using a helicopter, the United States Customs Service (USCS) and POPR located the subject boat and Suárez–Maya, accompanied by three other men as described. The boat was interdicted about one mile off the southwest coast of Puerto Rico.

After the boat was seized, it was found to be carrying about 16 kilograms of cocaine. A subsequent inventory search of the boat turned up a firearm. The seized firearm, a loaded revolver, was found covered by a T-shirt, behind a storage compartment near the location where Ramírez–Ferrer had been seated at the time of the interdiction. The search also revealed evidence linking the vessel to a relative of Suárez–Maya.

On March 31, 1993, a grand jury indicted defendants on charges of possessing and car-

rying a firearm in relation to a drug trafficking crime (count 3), 18 U.S.C. § 924(c)(1) (1994). On September 28, 1993, a jury convicted all three defendants on this count. On count 1, later upheld by the *en banc* court, relating to possession and importation of cocaine, Suárez–Maya was sentenced to life imprisonment, Ramírez–Ferrer to a term of 240 months, and Troche–Matos to a term of 120 months.[1] The sentences of Suárez–Maya and Ramírez–Ferrer were enhanced under 21 U.S.C. §§ 841(b) and 960(b) on account of prior drug crimes. On count 3, the firearm count, each appellant was sentenced to a mandatory minimum term of 60 months to be served consecutively, as required by the statute.

## II. DISCUSSION

Count 3 of the indictment charged that "the defendants herein, aiding and abetting each other, did knowingly, willfully and intentionally possess and carry a .32 caliber Smith & Wesson revolver during and in relation to a drug trafficking crime" in violation of 18 U.S.C. § 924(c)(1). In the original panel opinion, we held that there was insufficient evidence for a jury to infer that defendant Troche–Matos was guilty of violating the statute or aiding and abetting in its violation. There was no evidence that Troche–Matos actually or constructively possessed the gun; nor was there evidence that he was aware of its existence. In view of the circumstances, we held that the only way a jury could link Troche–Matos to the gun would be through sheer speculation and conjecture. As the government did not challenge these holding in its petition for rehearing *en banc*, we reiterate that Troche–Matos' conviction on the gun count must be reversed for lack of sufficient evidence.

As for Suárez–Maya and Ramírez–Ferrer, the scope of our present review was established by the *en banc* opinion, which held that "defendants' conviction for 'use' should be vacated, and they should face only reconsideration of their convictions under the carry prong." *Ramírez–Ferrer*, 82 F.3d at 1135

(citing *Bailey*, —— U.S. at ——, 116 S.Ct. at 508–09). The *en banc* panel based its holding on its understanding of *Bailey* as having limited the word "use" to the extent that it cannot apply in the instant case and having emphasized that " 'carry' has meanings not covered by 'use.' " *Id.*, 82 F.3d at 1134.

Although the defendants continue to style their appeal as an objection to sufficiency of the evidence, it is clear that the Supreme Court's decision in *Bailey* requires us to consider whether the convictions on the gun count can be sustained despite the erroneous instruction of the district court. When we wrote the original panel opinion, the district court's instruction was an accurate account of the law of the circuit; but in light of *Bailey*, it is plainly incorrect in regard to the meaning of "use."

■ The district court gave the jury the following instruction on the elements of 18 U.S.C. § 924(c)(1):

[T]he Government is not required to prove that the defendant or defendants actually fired the weapon or brandished it ... at someone in order to prove use, as that term used [sic] in these instructions. However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitating the commission of the drug offense, in other words, you must find that the firearm was an integral part of the offense charged.

Now, to prove that a defendant carried a firearm, the Government does not only have to prove that a defendant carried a firearm, the Government need only prove that a firearm was accessible during and in relation to a drug offense.

The district court's instruction, which could be heard by a reasonable jury to endorse the "fortress theory" rejected by *Bailey*, was (in hindsight) erroneous. However, the defendants did not object to it; we therefore review only under a "plain error" standard. This standard requires not only that the error be plain—which in light of *Bailey* this probably is—but also that affirmance would

---

1. As noted, *supra,* the convictions of each appellant on count 2, for importation of a controlled

substance, were reversed by the *en banc* court.

result in a "miscarriage of justice," one that would jeopardize public confidence in the integrity of the judicial process. *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993); *United States v. Randazzo*, 80 F.3d 623, 632 (1st Cir.1996).

In this case, the standard would require reversal of Suárez–Maya's and Ramírez–Ferrer's convictions only if we have substantial doubt about the certainty of the defendants' guilt. In making this determination, we consider both the evidence presented by the government and what we can infer from the verdict that the jury did in fact decide.

■ We begin by defining "carry" for purposes of 18 U.S.C. § 924(c)(1). We take our lead from *United States v. Manning*, 79 F.3d 212 (1st Cir.1996), in which we affirmed a district court's denial of a motion for acquittal on 924(c)(1) charges based on *Bailey*'s treatment of "use," because even though "use" no longer could cover defendant's actions, those actions met "any reasonable construction" of "carry." *Id.*, 79 F.3d at 216. In *Manning*, detectives ordered a defendant to stop while defendant was holding a briefcase, which later was found to contain illegal drugs and a loaded handgun. *Id.*, at 216. We note in passing that either defendant may be convicted as "aiding and abetting" if one defendant is found to have carried a firearm in violation of section 924(c)(1), and if the evidence is sufficient for a jury to infer that the other defendant aided and abetted this conduct.

As we noted in *Manning*, which was decided after the *en banc* oral argument was heard and after *Bailey*, but before the *en banc* opinion was issued, "[b]y narrowing the interpretation of 'use' to instances of active employment, the *Bailey* court recognized that the 'carry' prong would take on a new significance." *Id.*, 79 F.3d at 216. Although in *Manning*, the court found that it did not have to delineate the "precise contours" of the "carry" prong, *id.*, at 216, it noted that

"the word 'carry' is variously defined as 'to move while supporting (as . . . in one's hands or arms),' 'to move an appreciable distance without dragging,' and 'to bring along to another place,'" *id.*, at 216 (quoting *Webster's Third New International Dictionary* 343 (1986)).[2] This focus on dictionary meanings follows naturally from *Bailey*'s reliance on the "ordinary and natural" meanings in construing the term "use" in section 924(c)(1). *See Bailey*, —— U.S. at ——, 116 S.Ct. at 506 (discussing definitions taken from *Webster's New International Dictionary of English Language* and *Black's Law Dictionary*). In *Manning*, the court concluded that the defendant's "alleged actions readily me[t] all of the[ ] definitions" of "carry" taken from *Webster's*. *Manning*, 79 F.3d at 216; *see also United States v. Hernández*, 80 F.3d 1253, 1257–58 (9th Cir.1996) (quoting *Webster's* and *Black's*).

Our decision in *Manning* limits the construction of "carry" to situations in which the "firearm" has been "moved" or "brought along to another place," since all three parts of the definition adopted there contain this element of transportation. *See also United States v. Murrietta–Núñez*, 1996 WL 65240, *5 (9th Cir.1996) (rejecting the possibility of a "carry" prong-based conviction where a firearm was found under a bed near a bundle of marijuana, noting that "storing the gun for possible, later use" does not constitute "carrying" under *Bailey*); *Hernández*, 80 F.3d at 1257 (concluding that "in order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have *transported* the firearm on or about his or her person") (emphasis added). Furthermore, we must bear in mind that the government must present evidence from which a reasonable juror could conclude that this transportive function was "during" and "in relation to" the crime of possession with

---

**2.** With the first two of the three parts of the definition of "carry" relied on by the court in *Manning*, there is a seeming ambiguity as to whether the subject of "to move" is the actor or the firearm—that is, whether "move" is used here as a transitive or intransitive verb. The discussion in *Manning* proceeds as though

"move" were transitive. Because we do not believe it alters our analysis, we continue with this assumption, without deciding the question. From the evidence, the jury could reasonably infer both that the firearm moved and that defendants moved it (by having it aboard a moving boat).

intent to distribute. *See Manning*, 79 F.3d at 216 (quoting § 924(c)(1)).

However, unlike the court in *Manning*, we have no record evidence from which a jury could reasonably infer that either Suárez–Maya or Ramírez–Ferrer moved the firearm while "supporting" it "in [their] hands or arms." However, transporting a firearm on a boat would certainly implicate moving it "an appreciable distance without dragging" it or bringing it "along to another place." As a result, we are forced move beyond *Manning* and map the contours of "carry" in further detail. Specifically, we must decide whether there exists some required degree of proximity in conjunction with this drug crime-related transportation, which demands delving into a line-drawing problem. At one extreme, "carry" could be defined so narrowly as to only allow convictions where a factfinder could reasonably conclude that the defendant moved while maintaining actual physical contact with a firearm. At the other extreme, "carry" might be so loosely construed that a defendant could be deemed to "carry" the firearm when he or she merely had transported a firearm without touching it or having it accessible—for example, in a car trunk or in some hard-to-reach recess of a boat. We must address this question because while evidence was presented from which the jury could have reasonably inferred: (a) that the firearm was transported (on the boat) during and in relation to the drug crime in question and (b) that the firearm was within easy reach of defendant Ramírez–Ferrer, no evidence was proffered to justify a reasonable inference (c) that any defendant had any degree of physical contact with the weapon, or had otherwise "support[ed]" it, as "in one's hands or arms."

Since *Bailey*, was decided, a few circuits have addressed the scope of the "carry" prong. In *Hernández*, the Ninth Circuit confronted a situation in which a gun was found in a locked toolbox together with cocaine in defendant's garage after defendant was arrested during a controlled buy. *Hernández*, 80 F.3d at 1256–57. The Ninth Circuit concluded that, for a "carrying" conviction under section 924(c)(1), "the defendant must have transported the firearm on or about his person," meaning that "the firearm must have been immediately available for use by the defendant." *Id.* at 1258. As a result, the Ninth Circuit refused to find that the defendant carried a firearm for the purposes of section 924(c)(1).

Two circuits have specifically addressed situations involving the presence of guns and drugs in automobiles. In *United States v. Riascos–Suárez*, 73 F.3d 616, 623 (6th Cir. 1996), the Sixth Circuit found a defendant's conduct sufficient for conviction under the "carry" prong where the defendant had a gun on the driver's side of the dashboard console of a car that also contained drugs. The court there stated that it "h[e]ld that [defendant] carried the weapon for purposes of section 924(c)(1) because the firearm was within reach and immediately available for use." *Id.* at 623. The Sixth Circuit clarified its definition of "carry" in *United States v. Moore*, 76 F.3d 111, 113 (6th Cir.1996). There, the court remanded a case in which the defendant also had guns within easy reach. *Id.* at 113–114. However, the court distinguished the conduct of the defendant in *Moore* from that of the defendant in *Riascos–Suárez* because the defendant in *Moore* did not bring the drugs with him in the course of his drug trade. *Id.* at 113. The court noted that "immediate availability is [ ] a necessary, but not sufficient determinant." *Id.*

The Eleventh Circuit has also addressed the carry prong in an automotive context. *United States v. Farris*, 77 F.3d 391, 393–96 (11th Cir.1996). In *Farris*, the Eleventh Circuit confronted a situation where a firearm was found in the glove compartment of a co-conspirator's car used to transport illegal drugs to the controlled buy at which defendant was arrested, and which contained drugs. *Id.* Though it upheld conviction under the "carrying" prong, the Eleventh Circuit did not state its opinion as to the government's broader argument in that case, unqualified by any requirement of "accessibility," that "section 924(c) applies when a defendant carries a firearm in a vehicle that is being used as a base for drug distribution." *Id.* at 395.

Defendants here do not dispute that the weapon was aboard a moving boat, and the *en banc* court has upheld defendants' possession convictions. Thus, they do not challenge the proposition that they *physically* caused the weapon in question to be transported and that this transportation was during—in the sense of contemporaneous with—their crime of possession with intent to distribute illegal drugs. The evidence here, including diagrams of the boat with the position of defendants and the weapon clearly indicated, was sufficient for a reasonable jury to infer that the loaded gun was within easy reach of defendant Ramírez–Ferrer. Given the above persuasive authority emphasizing accessibility *and* transport and given the facts of the instant case, we hold that Ramírez–Ferrer's conduct suffices for conviction under an ordinary and natural meaning of the word "carry." We express no opinion, however, on the theory that a conviction for "carrying" may be upheld whenever a gun is merely present on a boat or other vehicle employed in a drug possession crime, regardless of accessibility. Ramírez–Ferrer's proximity also suffices for a jury reasonably to infer that Suárez–Maya, as captain of the boat and the defendant apparently responsible for the particular boat (it allegedly belonged to a relation of his), aided and abetted Ramírez–Ferrer's conduct. *See, e.g., United States v. Price,* 76 F.3d 526, 529–30 (3d Cir. 1996) (upholding conviction of defendant for aiding and abetting co-defendant's 924(c)(1) violation, since jury could have concluded, from ample evidence, that defendant knew of and benefitted from co-defendant's gun-related conduct). Thus, we uphold both defendants' convictions under section 924(c)(1)'s "carry" prong.

Ramírez–Ferrer and Suárez–Maya also argue that even if they "carried" the gun "during" their drug crime, they did not do so "in relation" to their drug crime. Specifically, they argue that they did not know the gun was there, pointing out that it was rusty and that the boat did not belong to either of them. But the defendants do not allege that there was any error in the jury instructions in this regard. Therefore, the short answer to this objection is that we affirm a jury's conviction if a rational trier of fact could

have found the defendants guilty beyond a reasonable doubt. *See Farris,* 77 F.3d at 395–96. The evidence need not exclude every hypothesis of innocence. *Id.* The jury could reasonably have attributed knowledge and intent to benefit from the gun to both Ramírez–Ferrer and Suárez–Maya, the boat's captain and the self-admitted principal with respect to the drug possession offense. Thus, the evidence is sufficient to uphold both defendants' convictions under section 924(c)(1).

## CONCLUSION

As a result of the foregoing, the judgment of the district court is *reversed in part* and *affirmed in part*.