114 F.3d 1196
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Honofre J.O. CHARGUALAF, Defendant-Appellant.
 No. 96-10246.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1997.
Decided May 21, 1997.
 
 Before: NORRIS, HALL and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Chargualaf challenges the district court's denial of his motion to suppress evidence seized from his car and residence on three separate occasions: October 27, 1994; January 4, 1995; and March 30, 1995. He also challenges the sufficiency of the evidence supporting his 18 U.S.C. § 924(c)(1) conviction. We AFFIRM.
 
 
 3
 * Chargualaf argues that the October 1994 search of his car was not a lawful inventory search because officer Babauta had discretion not to impound Chargualaf's car. He also argues that it was unlawful because Babauta did not inform Chargualaf that he had a right not to consent to the search.
 
 
 4
 The police may conduct warrantless inventory searches of impounded vehicles in police custody so long as they follow standardized caretaking procedures and do not act in bad faith or for the sole purpose of investigation. Colorado v. Bertine, 479 U.S. 367, 371-72 (1987). This is true regardless whether the officer has probable cause to search the vehicle. Id. The fact that the officer has discretion not to impound the car does not necessarily make the inventory search unconstitutional. Id. at 375-376 ("Nothing in Opperman or Lafayette prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.").
 
 
 5
 Guam Police General Order 94-16 does set forth standard criteria for cabining the discretion of police officers. General Order 94-16, at 2-3. For example, it provides that a vehicle may be impounded when it has not been registered by law. Id. at 3.
 
 
 6
 In addition, there is no evidence that Babauta exercised his discretion on the basis of suspicion of criminal activity. He explained to Chargualaf that he was going to conduct an inventory search for Chargualaf's protection. Accordingly, the fact that Babauta had discretion not to impound the car does not defeat the propriety of the search.
 
 
 7
 The fact that Babauta did not inform Chargualaf that he had a right not to consent to the search does not defeat the propriety of the search, either. Chargualaf contends that there is a requirement in General Order 94-16 that consent must be obtained from the driver before an inventory search may proceed. Appellant's Br. at 13. We find no such requirement. General Order 94-16 states that "[i]f the vehicle is to be processed, the reporting officer ... shall complete a Vehicle Processing Request Form and provide a copy of this form, a copy of the Vehicle Report (GD-4) and applicable search authorization to the assigned Crime Scene Investigator." General Order 94-16, p I (emphasis added). The reference here is not to the driver's authorization. The paragraph refers to the internal police administrative form justifying the reason for the impound of the vehicle. Accordingly, Babauta's failure to inform Chargualaf of a right not to consent does not invalidate the search.
 
 II
 
 8
 Chargualaf also argues that the January 1995 search of his car was unlawful because it was not based upon probable cause, but instead upon speculation and stale information (i.e., the October 1994 encounter with Chargualaf). The government argues that the search was lawful both as an inventory search and as a protective weapons search.
 
 
 9
 We agree with the government that the January 1995 search was a valid inventory search: Babauta testified that upon Chargualaf's failure to produce a valid registration, it was his intention to impound the car.
 
 
 10
 The January 1995 search was also a valid protective search. Because vehicle stops are "especially fraught with danger to police officers," a protective search of the passenger compartment of the vehicle, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief that the suspect is dangerous and may gain immediate control of a weapon. Michigan v. Long, 463 U.S. 1032, 1047, 1049 (1982). Probable cause is not required. Id. at 1050 (" '[T]he issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.' ") (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).
 
 
 11
 Because Babauta discovered two loaded firearms in Chargualaf's car upon a routine traffic stop only two months earlier, it was reasonable for him to believe Chargualaf was dangerous. Because Chargualaf was not handcuffed and was standing only four feet away from Babauta, it was reasonable for Babauta to believe Chargualaf might gain immediate control of a weapon. As the government put it,
 
 
 12
 In light of Babauta's discovery of two loaded firearms, including a machine gun, inside the identical [car] with the identical driver two months and eleven days earlier, Babauta certainly was reasonable in being concerned for his own personal safety and in conducting a brief protective search for weapons at that point before proceeding with a field sobriety test.
 
 
 13
 Appellee's Br. at 20. The search was a valid protective search.
 
 III
 
 14
 Chargualaf also argues that the March 1995 search of the residence was unlawful because his consent to search the residence was not freely and voluntarily given.
 
 
 15
 Several factors must be considered in determining whether consent is voluntary. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988). While none is dispositive, they include: (1) whether the defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he or she has a right not to consent; and (5) whether the defendant was told a search warrant could be obtained. Id.
 
 
 16
 The district court found that Chargualaf's consent was voluntary, and we will overturn this finding only if it is clearly erroneous. United States v. Kaplan, 895 F.2d 618, 622 (9th Cir.1990). Because (1) Chargualaf had been advised of his Miranda rights; (2) there is no evidence that the agents' guns were drawn; (3) Agent Boteler repeatedly advised Chargualaf that he had the right not to consent to the search; (4) the Consent to Search form advised Chargualaf that he had the right not to consent to the search; and (5) Boteler never told Chargualaf that it was inevitable that the search warrant would issue, the finding of voluntariness was not clearly erroneous.
 
 IV
 
 17
 Finally, Chargualaf challenges the sufficiency of the evidence supporting his § 924(c)(1) conviction. He argues that Bailey v. United States, 116 S.Ct. 501 (1995), establishes that he was not "using" the firearm found beneath the passenger-side floor mat of his car on January 4, 1995, and that United States v. Hernandez, 80 F.3d 1253 (9th Cir.1996), establishes that he was not "carrying" the firearm on that date, either. Chargualaf further contends that even if he was using or carrying the firearm on January 4, 1995, he was not doing so "in relation to" a drug trafficking crime. Appellant's Br. at 25-32.
 
 
 18
 Chargualaf's arguments are without merit. In Hernandez, we held that "in order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his or her person." 80 F.3d at 1258. We further explained, "[t]his means the firearm must have been immediately available for use by the defendant." Id.
 
 
 19
 In Hernandez, the firearm was locked in a tool box in a garage where a drug transaction occurred, and we concluded this did not constitute "carrying" under § 924(c)(1). Id. In United States v. Staples, 85 F.3d 461, 464 (9th Cir.1996), in contrast, we held that the "carry" prong of § 924(c)(1) was satisfied where the firearm was located in a glove compartment and the defendant was seated. We said in that case that the firearm was " 'about' [the defendant's] person, within reach and immediately available for use." Id.
 
 
 20
 The instant case is like Staples, not Hernandez: The firearm was located underneath the passenger-side floor mat, and was thus "immediately available for use" by Chargualaf. Id. Accordingly, Chargualaf was "carrying" the firearm.
 
 
 21
 Chargualaf's contention that the firearm was not carried "in relation" to a drug trafficking crime is also without merit. After his arrest on January 4, 1995, Chargualaf was transported to the police station, where Babauta conducted a search of his person which revealed methamphetamine, and where agent Boteler questioned Chargualaf after mirandizing him. During this session, Boteler asked Chargualaf whether he was using the gun and silencer for protection when he bought and sold the methamphetamine. Chargualaf said yes.
 
 
 22
 Notwithstanding this admission, Chargualaf would have us conclude that the presence of the firearm "was more a result of accident or coincidence rather than for the specific purpose of facilitating the drug trafficking offense at issue and for which [Chargualaf] is charged." Appellant's Br. at 34.
 
 
 23
 In Smith v. United States, 508 U.S. 223, 228 (1993), the Supreme Court held that the "in relation to" element of § 924(c)(1) means that the gun must at least facilitate, or have the potential of facilitating, the drug trafficking offense. In United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985), we held that carrying a firearm may "facilitate" a drug trafficking offense by "emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such a display or discharge in fact occurred...."[1]
 
 
 24
 As the government argues, Chargualaf's admission that he carried the pistol and silencer in order to protect himself while attempting to resell the methamphetamine "directly comports with what Smith and Stewart hold is required in order to satisfy the 'in relation to' element of Section 924(c)(1)." Appellee's Br. at 32. The pistol and silencer emboldened Chargualaf, and his carrying of them was thus "in relation to" the drug trafficking offense.
 
 
 25
 The conviction is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 In United States v. Loaiza-Diaz, 96 F.3d 1335, 1336 (9th Cir.1996), we said:
 The explanation of the "in relation to" element found in Stewart remains valid precedent despite our recognition in United States v. Hernandez, 80 F.3d 1253, 1257 (9th Cir.1996), that "[t]o the extent that our prior decisions [including Stewart ] are to the contrary [of Bailey ], they have been overruled." Stewart has been overruled to the extent it suggested that the "inert presence of a firearm, without more, is [ ] enough to trigger [the 'use' prong] of § 924(c)." Hernandez, 80 F.3d at 1257 (quoting Bailey, --- U.S. at ----, 116 S.Ct. at 508). Stewart has not been overruled, however, to the extent that it explained how "carrying" a firearm may be "in relation to" a drug trafficking crime.