133 F.3d 930
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bruce David KALTMAN, Defendant-Appellant.
 No. 97-50124.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 2, 1997.
Decided Dec. 29, 1997.
 
 Before: FERGUSON, O'SCANNLAIN and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. OVERVIEW
 
 2
 Bruce David Kaltman was indicted on charges of conspiracy to manufacture and cultivate marijuana and aiding and abetting the manufacture and cultivation of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2. Kaltman pleaded guilty to growing 757 marijuana plants and aiding and abetting his codefendant, Kenneth Trappen. Kaltman appeals the district court's denial of his pretrial motions: (1) a motion to traverse the search warrant under Franks v. Delaware; and (2) a motion to suppress evidence because the protective sweep of his residence tainted the later search pursuant to a warrant. Additionally, Kaltman argues that he did not consent to a later search of his residence.
 
 II. DISCUSSION
 A. Franks Motion
 
 3
 To be entitled to a Franks hearing, the defendant must make a substantial showing that the affidavit contains intentionally or recklessly false statements, and the affidavit cannot support a finding of probable cause without the allegedly false information. Franks v. Delaware, 438 U.S. 154, 155-56 (1978); United States v. Valencia, 24 F.3d 1106, 1109 (9th Cir.1994). Whether a false statement is intentional or reckless is a factual finding reviewed under the clearly erroneous standard. United States v. Hernandez, 80 F.3d 1253, 1260 (9th Cir.1996).
 
 
 4
 The court must set aside the false assertions and determine whether the remaining evidence is sufficient to establish probable cause. United States v. Mittelman, 999 F.2d 440, 443 (9th Cir.1993). If information was omitted from an affidavit, the court must consider the affidavit with the omitted information included. Hernandez, 80 F.3d at 1260.
 
 1. False Statements
 
 5
 Kaltman alleged that Kovensky falsely stated that the Ford Bronco driven by Trappen at the time of his arrest was registered to 1345 Manzanita Way, when it was actually registered to 5374 East Cresthill Drive, Anaheim, California. Kovensky's statement was not false. The Ford Bronco at issue is registered to Trappen at 1345 Manzanita Way. At the Franks hearing the government submitted the Department of Motor Vehicles registration which showed the Ford is registered to Trappen at Manzanita Way. In addition, on cross-examination, Kaltman stated that he was aware that Trappen was planning to register the car to the Manzanita address.
 
 
 6
 Kaltman also alleged the affidavit falsely stated that the confidential informant had provided Kovensky with the Manzanita address. In the affidavit, Kovensky does not assert that the informant provided him with Trappen and Kaltman's exact address. Rather, based on the informant's statements, Kovensky was able to locate their address.
 
 
 7
 Next, Kaltman alleged that Kovensky falsely stated the affidavit was already written before the residence was secured. This information does not appear in the affidavit, and therefore it could not have affected the judge's determination of probable cause. In addition, the information is not false. In his declaration, Kovensky states that a substantial portion of the affidavit was written prior to Trappen's arrest.
 
 
 8
 Kaltman further argued that Kovensky falsely alleged that it was difficult to locate a judge. Again, this information does not appear in the affidavit and could not have affected the determination of probable cause. This statement appears in Kovensky's declaration, and Kaltman produced no evidence that this statement is false.
 
 
 9
 The district court found that Kaltman had failed to submit any evidence to support his contentions that Kovensky made false statements in his affidavit.[1] Moreover, Kovensky failed to demonstrate that any of the allegedly false statements would negate the judge's finding of probable cause.
 
 
 10
 We review de novo a district court's determination that there was probable cause. Hernandez, 80 F.3d at 1258. Probable cause exists when based upon the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found. Illinois v. Gates, 462 U.S. 213, 214 (1983). Even if the allegedly false statements were eliminated from the affidavit, the remaining statements establish a reasonable probability that evidence of marijuana cultivation would be found at the Manzanita residence. Under the totality of the circumstances, probable cause existed to issue the search warrant.
 
 2. Omissions
 
 11
 Kaltman first alleged that Kovensky omitted the fact that at the time of his arrest, Trappen stated he did not live at 1345 Manzanita Way, but at 2032 Pacific Coast Highway, Lomita, California. The omission of this information was not relevant to the finding of probable cause because Kovensky had observed Trappen's vehicle at the Manzanita address and the vehicle was registered to the Manzanita address.
 
 
 12
 Next, Kaltman alleged that Kovensky failed to disclose in his affidavit that the distance between the marijuana garden and the Manzanita house was more than two miles. Kaltman failed to explain why this information is relevant or could have had any bearing on the determination of probable cause.
 
 
 13
 Finally, Kaltman alleged that Kovensky failed to notify the judge that he had searched the residence prior to obtaining a search warrant and he had used information from the search in preparing his affidavit. In his affidavit Kovensky stated that "he entered the residence for the purpose of securing it for a search warrant." The affidavit contains no information regarding anything that was observed when the officers secured the house. The district court found that Kovensky used no evidence obtained during the securing of the residence in obtaining the warrant. This finding is not clearly erroneous.
 
 
 14
 The district court found that even if the alleged omissions were included in the affidavit, there was still probable cause to issue the warrant. We also conclude that the omissions were not material to the determination of probable cause.
 
 B. Motion to Suppress
 
 15
 Motions to suppress are reviewed de novo. United States v. Kemmish, 120 F.3d 937, 939 (9th Cir.1997); United States v. Sherwood, 98 F.3d 402, 409 (9th Cir.1996). The trial court's findings of fact are reviewed for clear error. Kemmish, 120 F.3d at 939; United States v. Noushfar, 78 F.3d 1442, 1447 (9th Cir.1996).
 
 
 16
 Kaltman argues that the evidence found during the search of the Manzanita residence pursuant to a search warrant should be suppressed because it was tainted by the earlier warrantless protective sweep. Kaltman contends that the officers entered the house in order to acquire evidence to establish probable cause to obtain a search warrant.
 
 
 17
 Even if the initial protective sweep of the house was illegal, it is irrelevant to the admissibility of the evidence seized because the search warrant was based upon an independent source. Segura v. United States, 468 U.S. 796, 813-14 (1984).
 
 
 18
 Under the independent source doctrine, evidence discovered during a subsequent search pursuant to a valid warrant based upon an independent source does not have to be suppressed as "fruit" of an earlier illegal entry. Segura, 468 U.S. at 799; Murray v. United States, 487 U.S. 533 (1988). In Murray, officers illegally entered a warehouse and observed bales of marijuana in plain view. The officers later sought a search warrant for the warehouse. In the warrant affidavit the officers did not mention the prior entry or their observations during the entry. The Supreme Court held that the ultimate question is "whether the search pursuant to the warrant was in fact a genuinely independent source of the information." Id. at 541. The Court stated:
 
 
 19
 Knowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply.
 
 
 20
 Id.
 
 
 21
 Officer Kovensky had decided to obtain a search warrant prior to conducting the protective sweep. He had completed the majority of his affidavit before he arrived at the marijuana garden on the day of Trappen's arrest. Kovensky added three handwritten paragraphs to the affidavit regarding Trappen's arrest and the judge requested two additional paragraphs explaining what Kovensky expected to find in the Manzanita house.
 
 
 22
 The affidavit states that Kovenksy entered the residence "for the purpose of securing it for a search warrant," but it contains no information regarding what the officers observed during the protective sweep. Contrary to Kaltman's position, the officers had probable cause to search the house prior to conducting the protective sweep. The officers' surveillance and information from the confidential informant, as well as the arrest of Trappen and the confiscation of 555 marijuana plants, provided an independent source for the search warrant. See United States v. Salas, 879 F.2d 530, 537 (9th Cir.1989) (holding there was probable cause to issue a search warrant after a protective sweep because the information known to the officers prior to conducting the sweep constituted an independent source).
 
 
 23
 The district court did not err in concluding that the prior sweep of the house did not taint the later search pursuant to the warrant.
 
 D. Consent
 
 24
 Kaltman argues that he did not consent to the search of the Manzanita house. However, the search was conducted pursuant to a search warrant and therefore Kaltman's consent was not required. See Bumper v. North Carolina, 391 U.S. 543, 550 (1968).
 
 
 25
 After the search of the Manzanita house, the officers did obtain a consent from Kaltman for permission to reenter the house to collect grow lights from the basement. Kaltman was arrested after the search and read his Miranda rights. He then read a Consent to Search form and Kovensky informed him that he could refuse his consent. Kaltman consented to allow the officers to enter the house to retrieve the lights. Kaltman has presented no evidence that his consent was not voluntarily or intelligently given. See United States v. Torres-Sanchez, 83 F.3d 1123, 1129 (9th Cir.1996) (holding that whether a consent to search is voluntary is a question of fact based upon the totality of the circumstances); see also United States v. Chan-Jimenez, 125 F.3d 1324 (9th Cir.1997).
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Additionally, Kaltman failed to provide any evidence that the allegedly false statements were made intentionally or recklessly. Kaltman had the burden to prove Kovensky's deliberate or reckless disregard of the truth by a preponderance of the evidence. Hernandez, 80 F.3d at 1260