**UNITED STATES of America, Plaintiff and Respondent,**

v.

**James Thomas VAUGHN, Defendant and Movant.**

Nos. Cr. S–93–0027 WBS, Civ. S–96–2172 WBS.

United States District Court, E.D. California.

May 27, 1997.

Miquel Rodriguez, U.S. Atty., Sacramento, CA, for U.S.

James Thomas Vaughn, Sheridan, OR, pro se.

*MEMORANDUM AND ORDER*

SHUBB, Chief Judge.

Vaughn is a federal prisoner who in 1993 entered guilty pleas to drug and firearm offenses, and based on those pleas was convicted and sentenced to 180 months imprisonment and a term of supervised release. Appearing pro se, he now moves under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the firearm count—violation of 18 U.S.C. § 924(c)(1). He contends that the factual basis for his plea and conviction on that count has been undermined by the Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The court denies the motion because Vaughn's guilty plea was based on a binding plea agreement which was counseled and voluntary, and thus precludes this collateral attack.

*BACKGROUND*

Vaughn and his wife, Kathleen Vaughn, were charged in a four–count indictment with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a list-

**5.** In so doing, the Court respectfully disagrees with the analysis employed and results reached by the district courts in *Finch v. Hercules, Inc.,* 865 F.Supp. 1104 (D.Del.1994) and *Graffam v. Scott Paper Con.,* 848 F.Supp. 1 (D.Me.1994).

ed chemical in violation of 21 U.S.C. § 841(d)(2) (Count Two); use of a firearm in violation of 18 U.S.C. § 924(c)(1) (Count Three); and felon in possession in violation of 18 U.S.C. § 922(g)(1) (Count Four). With respect to Count Three, *i.e.*, the § 924(c)(1) count, the body of the indictment charged:

JAMES THOMAS VAUGHN, and
KATHLEEN THOMAS
VAUGHN,

defendants here, on or about April 17, 1992, in the County of Solano, State and Eastern District of California, during and in relation to drug trafficking crimes which may be prosecuted in a court of the United States, to wit: possession with intent to distribute methamphetamine, a Schedule II controlled substance, (as charged in Count One) and possession of ephedrine knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine, a Schedule II controlled substance (as charged in Count Two), did use and carry firearms, to wit: (1) a loaded Browning model BDA–380, .380 caliber pistol, serial number 425NM10792; (2) a loaded Beretta model 92FS, 9mm pistol, serial number 1731142, equipped with laser sight; and (3) a loaded Norinco model AKS, .233 caliber assault rifle, serial number 322072, with affixed bayonet, in violation of Title 18, United States Code, Section 924(c)(1), and 18 U.S.C., Section 2.

Prior to trial, Vaughn entered into a plea agreement with the government. He agreed to plead guilty to Count Two and Count Three, as charged. In particular, and with respect to Count Three, he stipulated to the fact that he "used or carried a firearm (as charged in count three) during and in relation to his possession of a listed chemical for purposes of manufacturing methamphetamine (as charged in count two)." He also agreed not to contest his sentence in any post–conviction proceeding, including a proceeding under 28 U.S.C. § 2255. In ex-

change, the government agreed not to prosecute Vaughn for his involvement in other drug activity, and agreed to dismiss Count One and Count Four of the indictment.

Subsequently, in June 1993, Vaughn entered guilty pleas to Count Two and Count Three pursuant to that plea agreement.[1] This court adjudged him guilty based on those pleas, and sentenced him to a 180 month term of imprisonment (120 months on Count Two, and a consecutive 60 month term on Count Three) followed by a term of supervised release. Judgment including sentence was filed September 9, 1993. He did not directly appeal. Instead, in December 1996—one year after the *Bailey* decision—Vaughn brought this motion.[2]

## DISCUSSION

### I.

A defendant who has been convicted on a guilty plea entered pursuant to a plea agreement stands in a different position than one convicted after trial, or even one who is convicted based on an unconditional plea of guilty. Such a defendant's conviction results from an agreement he made with the government. As part of such agreement, the defendant agrees to give up certain valuable rights, such as the right to jury trial and everything that goes along with it. In exchange, the government agrees to give up valuable rights as well. In this case, for example, as part of the plea agreement the government agreed to dismiss two serious charges in the indictment: (1) possession of methamphetamine with intent to distribute; and (2) being a felon in possession of a firearm. Upon conviction, those charges would have added substantially more time to the guideline sentence. The government further agreed not to pursue additional charges, including charges arising out of certain conduct in both the Eastern and Northern Districts of California.

A plea agreement is thus in the nature of a contract between the defendant and the gov-

---

1. There is no claim that the court did not comply with Fed.R.Crim.P. 11 in taking the plea.

2. The motion is not untimely under the one–year limitations period provided in the Antiterrorism

and Effective Death Penalty Act of 1996. *Calderon v. United States District Court*, 112 F.3d 386 (9th Cir.1997).

ernment. Vaughn in this case bargained for the expectation that the government would not come back and prosecute him for the other offenses, or later seek to increase his sentence. The government bargained for the expectation that it would not have to further investigate Vaughn's conduct, prepare and prove its case, and preserve indefinitely the evidence it had thus far developed. Each was entitled to the benefit of their bargain.

Under traditional contract principles, a defendant cannot be relieved from his agreement with the government simply because of a subsequent judicial decision.

> The general understanding of the law at the time of a settlement of a contract, though erroneous, governs the settlement; and the subsequent determination of the question of law by judicial decision to the contrary does not create such a mistake of law as courts will rectify, nor can it have a retroactive effect to overturn the settlement which was legal and valid when made.

14 Cal Jur 2d, *Contracts,* § 76 (1974). For the law to provide otherwise, would defeat the parties' bargained for expectation of finality.

The criminal law which defines the consequences of guilty pleas is not unlike traditional contract law. A conviction on a guilty plea ordinarily forecloses all issues on collateral attack except "whether the plea was counseled and voluntary." *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Vaughn's guilty plea bore all of the indicia of a counseled and voluntary plea. It was entered into on the advice of counsel, and it was not induced by false assurances or coercive threats. The guilty plea and ensuing conviction thus preclude this collateral attack based on *Bailey.* *See Bousley v. Brooks,* 97 F.3d 284 (8th Cir.1996), *petition for cert. filed,* No. 96–85616 (March 18, 1997); *see also United States v. Nelson,* 109 F.3d 1323, 1325 n. 2 (8th Cir.1997).

## II.

This analysis has not been accepted by all courts. At least one court has emphasized that a guilty plea cannot be voluntary unless the defendant understands the elements of the § 924(c) charge. That court reasoned that a defendant could not have understood the elements of § 924(c) charge in this circuit prior to *Bailey* "because the Ninth Circuit cases upon which explanation of those elements rested now appear to have been flawed." *United States v. Barron,* 940 F.Supp. 1489, 1490–91 (D.Alaska 1996).

This court, however, cannot reconcile such an approach with that taken in two Supreme Court decisions addressing whether a supervening judicial decision afforded grounds for collaterally attacking a conviction on a guilty plea. Those two cases, *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) and *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), strongly suggest that the issue raised by a supervening judicial decision is not so much one of whether the defendant understood the elements of the charge in light of a supervening decision, but whether the guilty plea was counseled at the time it was entered.

In *McMann,* the petitioners collaterally attacked state court convictions based on guilty pleas. They argued that they had pleaded guilty because of prior confessions which were potentially rendered unconstitutional, and thus inadmissible at trial, by a supervening Supreme Court decision. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Among other things, the Supreme Court rejected the argument that had the supervening decision been the law when the pleas were made, there would have been no guilty pleas:

> It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and the facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a

knowing and intelligent act. *McMann*, 397 U.S. at 774, 90 S.Ct. at 1450.

Similarly in *Brady*, the petitioner had pleaded guilty to a charge of kidnaping in violation of a federal statute that allowed for the imposition of the death penalty only upon the recommendation of the jury, former 18 U.S.C. § 1201(a). Nine years after his plea, the Supreme Court held that § 1201's death penalty provision was unconstitutional. *See United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). Brady then collaterally attacked his conviction, claiming that the *Jackson* decision rendered his plea invalid. The Supreme Court rejected the contention:

> A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473.

These cases preclude an approach to the issue that places emphasis on whether the plea was voluntary in light of a supervening decision. In light of *McMann* and *Brady*, the issue is not whether Vaughn intelligently understood the elements of the charge in light of *Bailey*, but whether he made a counseled decision in light of the then–existing law.

Vaughn discussed the indictment and the case generally with his counsel prior to entering a guilty plea. To overcome a plea of guilty entered on the advice of counsel, a defendant must "demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (quoting *McMann*, 397 U.S. at 771, 90 S.Ct. at 1449). Vaughn received competent advice: he pleaded guilty to the § 924(c)(1) charge based on conduct that unmistakably consti-

tuted a crime under the law of this circuit before *Bailey*. At the time of his plea, it would have been sufficient in this circuit for the government to show "use" within the meaning of § 924(c)(1) by showing that any of the three firearms described in the indictment served to protect the defendant or his drugs, or to intimidate others, regardless of whether any of the firearms were actually displayed or discharged. See *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1385 (9th Cir.1991). At his plea hearing, Vaughn admitted sufficient facts to satisfy *Torres–Rodriguez*: he admitted that at the time of his arrest, he had the guns described in the indictment at the house to protect himself and his drug operation from other drug people.

Subsequently, the Supreme Court in *Bailey* interpreted the law to require the government to show that a defendant "actively employed" one or more of those firearms. *Bailey*, —— U.S. at ——, 116 S.Ct. at 509. That neither Vaughn nor his counsel anticipated the Supreme Court's unanimous ruling in *Bailey* only places them within the class of virtually every other criminal defendant and defense attorney who appeared before courts in this circuit in § 924(c)(1) cases prior to the *Bailey* decision. See *McMann*, 397 U.S. at 770, 90 S.Ct. at 1449 ("That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty"). Vaughn thus cannot demonstrate that the advice he received was not "within the range of competence demanded of attorneys in criminal cases."

It is true that in neither *McMann* nor *Brady* did the supervening Supreme Court decisions raise a concern about the accuracy of the defendants' admissions that they committed the crimes. However, that distinction is immaterial, because by pleading guilty to the crime of using and carrying a firearm during and in relation to a drug trafficking crime, Vaughn forfeited the claim that he did not in fact "use" or "carry" a firearm. "A plea of guilty and the ensuing conviction

comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *Broce*, 488 U.S. at 569, 109 S.Ct. at 762.

The Seventh Circuit has reasoned that while by pleading guilty a defendant waives a challenge to the facts underlying the charge, he does not waive the right to contest whether those facts are sufficient to constitute a crime. *Stanback v. United States*, 113 F.3d 651 (7th Cir.1997); *see also Lee v. United States*, 113 F.3d 73 (7th Cir.1997) ("He could not possibly be viewed as having voluntarily waived what turns out to be a *Bailey* challenge when *Bailey* did not exist at the time pled guilty"). That reasoning imports waiver concepts that are inconsistent with the reasoning of *Broce*. *Broce* indicates that the rule that a conviction on a guilty plea forecloses a collateral attack does not depend on a waiver analysis. *Broce*, 488 U.S. at 572, 109 S.Ct. at 764 (and cases cited therein). It is unlikely that the Ninth Circuit would adopt the Seventh Circuit's reasoning. *See United States v. Morrison*, 113 F.3d 1020 (9th Cir. 1997) (holding that a defendant who plead guilty to firearm use in connection with a burglary, "was precluded from contending that he did not, in fact, use a gun").

### III.

There is an exception to the rule that a counseled and voluntary guilty plea precludes collateral attack. That exception applies "where on the face of the record the court had no power to enter the conviction or impose the sentence." *Broce*, 488 U.S. at 569 & 574–76, 109 S.Ct. at 762 & 764–66. Two circuits have invoked variations of this exception, and concluded that a guilty plea does not bar a collateral attack based on *Bailey*. Those cases reason that the *Bailey* decision warrants relief under this exception because the facts which the defendant pleaded guilty to no longer constitute a crime under § 924(c)(1). *United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir.1996); *United States v. Andrade*, 83 F.3d 729, 731 (5th Cir.1996).

The reasoning of the Fifth and Tenth Circuits is not persuasive in light of the Supreme Court's decision in *United States v. Broce*. To come within the exception, the constitutional infirmity must have been of such a nature that it should been determined "by the presiding judge at time the plea was entered on the basis of the existing record." *Broce*, 488 U.S. at 575, 109 S.Ct. at 765. The kind of constitutional infirmity that fits this definition is illustrated by *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).

In *Blackledge*, "the concessions implicit in the plea were simply irrelevant because the constitutional infirmity in the proceedings lay in the State's power to bring the indictment at all." *Broce*, 488 U.S. at 575, 109 S.Ct. at 765. In *Menna*, "the indictment was facially duplicative of an earlier offense of which the defendant had been convicted and sentenced so that the admission made by Menna's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense ..." *Id.* at 575–76, 109 S.Ct. at 765–66.

Here, Vaughn cannot claim that the infirmity was of such a nature that it should have been determined by the court at the time it accepted Vaughn's guilty plea, nor does the alleged infirmity rise to constitutional magnitude. As previously discussed, at the time of the plea hearing, the facts in relation to then–Ninth Circuit law amply supported Vaughn's guilty plea.

Moreover, Vaughn's perceived constitutional challenge bears no resemblance to those in *Blackledge* and *Menna*. Vaughn cannot challenge the federal government's power to indict him with violating § 924(c)(1), or suggest that the charge, judged on its face, could not constitutionally be prosecuted. *Broce*, 488 U.S. at 575, 109 S.Ct. at 765–66. His claim, instead, is that under *Bailey* there is an inadequate factual basis for his guilty plea to support his conviction. *See Nelson*, 109 F.3d at 1325 (the relevant question on the merits of a *Bailey* claim is "whether there was an adequate factual basis for [the movant's] plea"). Challenges to the adequacy of the factual basis for a plea fall outside the *Blackledge/Menna* exception. *Cf. United States v. Cordero*, 42 F.3d 697, 699 (1st Cir. 1994) (holding that the *Blackledge/Menna* exception does not apply where the challenge

merely calls into doubt the sufficiency or quantum of proof relating to guilt).[3]

## IV.

It so happens in this case that the court knows there was a factual basis for Vaughn's plea even under post–*Bailey* law. Having reviewed the presentence report in the process of sentencing Vaughn, the court now knows that the government could have adduced evidence that Vaughn stated to the searching officers that he had the Beretta pistol in his right hand when the officers entered his residence, and had already thrown the Beretta to the other side of the room by the time the officers found him. At the time the court accepted the plea, however, these facts were not unequivocally clear. The government attorney recited the evidence it would have offered at trial to satisfy the "use" or "carry" element of § 924(c)(1) as follows:

> At the time of this search, the officers found that there were a number of weapons, including all those described in Count III, in the residence. In addition there was ammunition for all of the weapons. In particular at the time of this search, James Vaughn told the searching officers who later arrested him that he had *possessed* a loaded Beretta at the time that they were making entry. (emphasis added).

This record left ambiguous what would have been a crucial question if Vaughn entered his guilty plea today: Did the defendant "carry" the Beretta on his person? *Bailey*, —— U.S. at ——, 116 S.Ct. at 507 ("Under the interpretation we enunciate today, ... a firearm can be carried without being used, *e.g.*, when an offender keeps a gun hidden in his clothing throughout a drug transaction"); *see also*

*United States v. Hernandez*, 80 F.3d 1253, 1257–58 (9th Cir.1996) (a defendant carries a firearm if he or she transports it on or about his person such that it is immediately available for use by the defendant).[4]

The government did not crisply present the facts at the plea hearing because it did not need to do so. It made an adequate factual showing under pre–*Bailey* law. The court should not now have to pretend that it does not know what the government could have shown at the plea hearing. *See United States v. Alber*, 56 F.3d 1106, 1110 (9th Cir. 1995) (indicating the court evaluates the adequacy of the factual basis for plea by examining the evidence before the district court at the time of judgment). The validity of a plea agreement ought not to depend, however, on information which the court learns from a presentence report after the plea is entered. This dilemma only serves to illustrate the fallacy in allowing a defendant to challenge the factual basis of his voluntary plea based upon an interpretation of the law handed down after his conviction.

Courts regularly interpret and reinterpret criminal statutes; it is an integral part of the judicial process. It is impossible for a prosecutor and defense counsel to predict how the courts might in the future reinterpret a criminal statute at the time they negotiate a plea agreement. They must rely upon the law as they understand it at the time they enter into the plea agreement. Likewise, it is impossible for the court at the time of taking the plea to anticipate how the higher courts might interpret the law at some time in the future. In ascertaining the factual basis of a plea, the court must thus also rely upon the law as interpreted by the higher courts at the time the plea is entered. The regular

---

**3.** This case is distinguishable from *United States v. Ruelas*, 106 F.3d 1416 (9th Cir.1997). There, the Ninth Circuit reached the merits of a *Bailey* claim, despite a waiver of the right to appeal, because appellant alleged that the indictment itself failed to allege an offense against him. The body of that indictment alleged stated only that the defendant "did possess" a firearm. *Id.* at 1418. Vaughn cannot complain of any comparable defects in the indictment because the indictment here tracks the language of § 924(c)(1) itself.

**4.** What the *Hernandez* court meant by the term "transport" is not clear. It could be argued that after *Hernandez*, a gun must not only be carried, in the sense of being held or worn on one's person, it must also be transported in the sense of having been moved from one place to another. It is doubtful that the *Hernandez* court intended such a meaning. If it did, then the Supreme Court's illustration of the "carry" prong—the offender who keeps a gun hidden in his clothing throughout a drug transaction—fails the *Hernandez* because it does not indicate that the offender also "transported" the firearm.

 

process of reinterpreting statutes must be allowed to occur without the threat that each such reinterpretation will result in the re-opening of final convictions on guilty pleas. As Justice Stevens wrote:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979).

Vaughn's conviction did not result from unfair procedures, and it is not now unjust to require him to be bound by the plea agreement he made with the government. It would instead be unjust if whenever a court reinterpreted a statute, every defendant who had ever pleaded guilty to a violation of that statute were allowed to collaterally attack his conviction upon the ground that there is no factual basis for his plea under the new interpretation. There would never be an end to a criminal proceeding. The government would be obliged to preserve thousands of guns, kilos of drugs, and other physical evidence indefinitely on the chance it might be required to prove its case years later because a defendant's plea is set aside as the result of some future judicial interpretation of the statute.

## V.

For all of the foregoing reasons, the court concludes that Vaughn's guilty plea precludes this collateral attack on his conviction and sentence under § 924(c) based on the Supreme Court's decision in *Bailey.* No evidentiary hearing is required to resolve his § 2255 motion because the records and files in this case conclusively show that the defendant is entitled to no relief.

IT IS THEREFORE ORDERED that the motion for relief under 28 U.S.C. § 2255 be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Vaughn's application for appointment of counsel be, and the same hereby is, DENIED.